IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

TERRANCE L. SMALLS　　　　　　　　　）　CRIMINAL NO.: 9:98-00322
　　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　vs.　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　　）
UNITED STATES OF AMERICA　　　　　　）


**AMENDED ANSWER AND OPPOSITION TO MOTION UNDER
28 U.S.C. § 2255; MOTION FOR SUMMARY JUDGMENT**

## I.　　PROCEDURAL HISTORY

Terrance L. Smalls ("Smalls" or "Movant"), Keith Chisolm ("K. Chisolm") and Kevin Mims

("Mims"), along with many others, were part of a drug distribution organization operated by

Benjamin Gibbs ("Gibbs") in the Burton area of Beaufort County, South Carolina.[1]  One of the main

suppliers of cocaine and cocaine base ("crack") was Angelo Pringle, a first cousin of Smalls.  Up to

kilogram quantities of cocaine and crack were involved.  The operation had people working shifts

selling drugs 24 hours a day, and Gibbs and his workers used scanners and walkie-talkies in order

to avoid detection by the police.  During the course the crack and cocaine distribution conspiracy,

Gibbs and Smalls murdered Audrey Stoeckle ("Ms. Stoeckle"), who Gibbs believed, incorrectly, was

an informant for the police.

---

[1]　　This brief factual summary is derived from the trial record in <u>United States v. Benjamin Gibbs and Wendell Rivers</u>, Criminal Number: 9:98-00322 [the trial began on January 24, 2000, and ended on February 3, 2000], as well as paragraphs 5 through 28 of the Presentence Investiga-tion Report ("PSR") prepared by United States Probation Officer Amy E. Blalock and revised on February 5, 2004.

On December 9, 1998, Smalls[2] was charged in three counts of a 33 count Second Superseding Indictment (2/SI). Count 1 charged Smalls, Gibbs and Chisolm with conspiring with their co-defendants to possess with intent to distribute and to distribute a quantity of crack and cocaine from January 1, 1992, until July 31, 1998, in violation of 21 U.S.C. § 846. Count 2 charged Smalls with possessing with intent to distribute a quantity of crack from December 1994 through January 1995, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Similarly, Count 3 charged him with possessing with intent to distribute a quantity of cocaine, in violation of the same statutes.

On January 29, 1999, Smalls was arrested in the Northern District of Georgia. On February 25, 1999, his attorney, Joenathan S. Chaplin ("Chaplin"), asked that the Government send him a proffer letter for Smalls. SHT: 244.[3] Chaplin signed the letter as of March 17, 1999, and consented to Smalls being interviewed by Government agents at "any time." SHT: 253-54. Agents told Chaplin prior to interviewing his client that they believed Smalls had participated in the July 19, 1994, murder of Ms. Stoeckle. SHT: 254-55. The Government agreed not to question Smalls about the murder during the first interview in order to give his attorney time to talk with the Beaufort County Solicitor's Office and his client regarding the allegations. After he spoke with someone from the Solicitor's Office, and after Smalls assured him that he had no knowledge of the murder, Chaplin agreed that Government agents could question his client regarding the murder. SHT: 255-56.

---

[2]     Smalls, Gibbs, Chisolm and Mims were among the 28 defendants charged.

[3]     The transcript of the sentencing hearing conducted on February 11-13, 2004, will be referred to "SHT:" with the number(s) following the abbreviation being a citation to the relevant pages(s).

On May 20, 1999, Smalls entered into a plea agreement with the Government and appeared before this Court, along with co-defendants Franquilla Byson and Ivan Jenkins, for a guilty plea hearing. GPHT: 1-40.[4] Movant pled guilty to Counts 1 and 2 on that date. The provisions of his plea agreement were fully reviewed with him and he was advised of his obligations to tell the truth and what would happen if he did not. He admitted to responsibility for at least 500 grams but less than 1.5 kilograms of crack, was advised concerning the consequences of failing a polygraph examination and of the provision relieving the Government of its obligations if it was determined that Smalls "had some knowledge concerning the murder of Audrey Stoeckle . . . or . . . shot her or otherwise caused her death." GPHT: 26-29.

On December 15, 1999, in compliance with that agreement, and with Chaplin's consent, Smalls submitted to a polygraph examination. PSR, para. 20. After he failed the polygraph, Chaplin became concerned that his client would not be allowed to testify at Gibbs' trial in January 2000. SHT: 230. At the beginning of that trial, Chaplin continued to try to rehabilitate him so that he could testify in order to be eligible for a downward departure at sentencing. SHT: 321-32.

On January 24, 2000, Gibbs and Wendell Rivers, the only two co-defendants of Smalls in Criminal Number: 9:98-00322 who had not pled guilty, proceeded to trial. They had been charged with 20 others in a Third Superseding Indictment (3/SI). On February 3, 2000, Gibbs

---

[4] The transcript of the guilty plea hearing conducted on May 20, 1999, will be referred to as "GPHT: 1-40" with the number(s) following the abbreviation being a citation to the relevant page(s).

was convicted of Counts 1 through 6[5] while Rivers was convicted of Counts 1, 2 and 8. They were convicted of all of the counts in which they were named.

On June 22, 2000, this Court sentenced Gibbs to life in federal prison on Counts 1 and 5, and to terms ranging from 10 years to 40 years on Counts 2, 4 and 6, with all of those terms to run concurrently. A five year consecutive sentence was imposed on Count 3. On August 29, 2000, this Court sentenced Rivers to a total term of imprisonment of 248 months, consisting of concurrent terms of 188 months on Counts 1 and 2 and a consecutive five year term on Count 8. Gibbs and Rivers appealed and the Fourth Circuit Court of Appeals affirmed their convictions and sentences in an unpublished opinion on October 16, 2001. United States v. Gibbs, et al., 2001 WL 1230854 (4th Cir. (S.C.)). Rejecting Gibbs' argument that his sentence violated Apprendi v. New Jersey, 530 U.S. 466 (2000), the Fourth Circuit concluded that Gibbs could not show that his substantial rights been violated. The panel specifically found that this Court, post-Apprendi, if faced with six counts including three drug charges that carried statutory maximums of 30 years (as opposed to the statutory maximum of life that those charges carried prior to Apprendi where no drug amount had been alleged), " was obligated to sentence Gibbs to 120 years imprisonment."

---

[5]      It is noted that Counts 1, 5 and 6 in the 3/SI were the same as Counts 1, 2 and 3, respectively, in the 2/SI, which is the charging document to which Smalls pled guilty to Counts 1 and 2 on May 20, 1999. Had Movant not pled guilty, he would have been charged with Gibbs and Rivers in Counts 1 and 2 of the 3/SI, and with Gibbs in Counts 3, 5 and 6 of that same charging document. See Exhibit 1 and pages 7 and 8 of the Sentencing Memorandum filed by the Government on April 22, 2002. Because of the prevalent use of firearms by members of the conspiracy, all of the defendants in the 3/SI who had not pled guilty as of the date it was filed were charged in the firearms conspiracy (Count 2). The specific use of a firearm in the execution-style murder of Ms. Stoeckle on July 19, 1994, was the basis for Counts 3 and 4. Since Gibbs was a convicted felon, and Smalls was not, Smalls would not have been charged in Count 4.

As a result, Gibbs could not demonstrate that his life sentence was longer than the sentence to which he otherwise would have been subject.  Gibbs, 2001 WL 1230854 * 2.

In February 2001, the Government confirmed with Chaplin that Smalls was not willing to be interviewed further relating to his knowledge of Angelo Pringle and others, and that he would not "submit to a polygraph examination concerning various aspects of his drug-related knowledge." SHT: 236; Exhibit 2.

The initial Presentence Investigation Report had been prepared and then revised on April 18, 2000, and February 12, 2001, and Smalls appeared for sentencing on May 30, 2001.  This Court, with the concurrence of Smalls and the Government, agreed to postpone the sentencing until the Fourth Circuit provided guidance regarding the Supreme Court's decision in Apprendi.  Chaplin and the Government subsequently submitted memoranda discussing several issues that might be affected by that decision.  The Government's Memorandum Concerning Sentencing Issues Involving Apprendi and Acceptance of Responsibility ("Sentencing Memorandum") was filed on April 22, 2002, and documented in detail Smalls' multiple violations of his plea agreement.  Those included his denial of knowledge that his cousin, Angelo Pringle, was involved in the drug business, his withholding of information about Pringle and others, his refusal to continue to cooperate with the Government, his failure to pass a polygraph test (concerning the murder of Ms. Stoeckle) and his unwillingness to submit to a second "polygraph examination concerning various aspects of his drug-related knowledge."  Sentencing Memorandum: 2-4.  Smalls was specifically placed on notice that he had breached paragraphs 5, 6 and 11 of the plea agreement.

On May 30, 2002, Chaplin filed a motion for appointment of additional counsel.  After the motion was denied, he was relieved and Andrew J. Savage, III ("Mr. Savage"), was thereafter

appointed to represent Smalls. Through Mr. Savage, Smalls objected to numerous provisions in the PSR. He objected to information concerning the drug quantity stipulation in his plea agreement, all information regarding drug quantities and all references to the murder of Ms. Stoeckle.

Following further revisions to the PSR on June 2, 2003, and February 5, 2004, Smalls appeared before this Court for sentencing. That hearing, which commenced on February 11, 2004, spanned three days and included testimony from three federal agents and Chaplin. SHT: 1-352. Excerpts of the trial transcripts of six witnesses who testified during the trial of Gibbs were submitted into evidence, as were a portion of the incident report relating to Ms. Stoeckle's murder on July 19, 1994, reports documenting interviews of Movant and several Government witnesses, as well as the report reflecting Smalls' failure of the polygraph examination. SHT: 12-21. In arriving at the appropriate sentence, this Court concluded that "while the murder . . . requires life imprisonment, I think the *Apprendi* rule really comes into effect, and the maximum that the Defendant could get under it is . . . 20 years under Count One and 20 years under Count Two and . . . where the Guideline Range exceeds the maximum under any Statute . . . that those counts should be run . . . consecutive to meet the . . . Guidelines." As a result, this Court determined that Smalls' two 20 year terms of imprisonment should run consecutively with his "term . . . capped at . . . 40 years." SHT: 335. After all of the evidence had been presented, this Court concluded that Smalls, based upon proof beyond a reasonable doubt, had participated in the murder with Gibbs and had shot Ms. Stoeckle. SHT: 347. Smalls was sentenced to a term of imprisonment of 480 months, consisting of consecutive terms of 240 months on Counts 1 and 2. SHT: 349.

The Judgment was filed on March 9, 2004, and Smalls timely appealed his sentence. Among other issues, Smalls challenged this Court's consideration of the statement he made to agents on

January 26, 2000, contending that his right to remain silent had been violated, that he had invoked

his right to counsel and that it was the result of deficient advice from Chaplin.  See Exhibit 3, which

is the Statement of Issues Presented in the Brief of Appellant submitted on November 15, 2004.

With his sentence imposed prior the decision of the United States Supreme Court in <u>United States</u>

<u>v. Booker</u>, 125 S.Ct. 738 (2005), the Fourth Circuit applied <u>Booker</u>, vacated his sentence and

remanded, but rejected his Fifth and Sixth Amendment contentions concerning this Court's

"consideration of his post-plea admissions."  <u>United States v. Smalls</u>, 2005 WL 1395162 (C.A.4

(S.C.)), decided June 14, 2005.  The panel found that Smalls had "waived his privilege against self-

incrimination by entering into the plea agreement with the Government, in which he specifically

agreed to 'be fully truthful and forthright'" and that he had "waived his Fifth Amendment privilege

against self-incrimination regarding the Stoeckle murder."  The Fourth Circuit also concluded that

there had been no violation of his Sixth Amendment right to counsel, and specifically relied on his

entry into the plea agreement which provided for him to "be fully truthful and forthright," the prior

explanations that had been afforded him concerning his constitutional rights, his knowledge of the

applicable rights, his attorney's efforts to have Smalls eligible for a downward departure and his

failure to request the presence of Chaplin at the interview conducted on January 26, 2000.

Following the remand, Movant appeared with Mr. Savage for re-sentencing on August 10,

2005.  SHT-II: 1-35.[6]  This Court recapped the history of the case through the <u>Apprendi</u> and

<u>Booker</u> decisions and the first appeal, found that Smalls had received the benefit of <u>Apprendi</u> and

---

[6]     The transcript of the hearing conducted on August 10, 2005, will be referred to "SHT-II:"
with the number(s) following the abbreviation being a citation to the relevant pages(s).

listened to the arguments of counsel. SHT-II: 8-31. In stating the Government's position, the prosecutor urged that:

> . . . regardless of what anyone wants to say about Joenathan Chaplin, the Government has always taken the position that, however he got to it, he ended up benefitting this Defendant in the end because he got him to plead guilty, and we're here today talking about a 480-month potential sentence because of what was placed into effect at that time.
>
> If it had been resolved back in 1999 or 2000, the chance is that this Defendant would have a life sentence just like Mr. Gibbs, but he doesn't.

SHT-II: 28. After considering the advisory Guidelines and the factors set forth in 18 U.S.C. § 3553(a), this Court focused on the seriousness of the offense, reiterated that he had made the cross-reference finding based upon proof beyond a reasonable doubt and stated that:

> . . . I don't know that I've heard of a more horrible crime. And taking her . . . out of the van, one of them shooting and the other go back because she was making sounds, shooting some more.
>
> That's a terrible - - I can't think of anything more terrible. And there's nothing in 3553 that stands out more than the seriousness of the horrible crime that was committed and the need to provide just punishment for that. There's nothing in 3553 that touches on this that can come near touching on that.
>
> And I think that the Defendant is fortunate, . . . as Mr. Bickerton said, he's not facing a life sentence, because I'd impose, if I thought - - I don't have authority to do that. . . .
>
> . . . But I think he is indeed fortunate that I don't have the right to give him life; because, if I did, I would.

SHT-II: 31-32. This Court again commented on the terrible nature of the offense before again imposing a term of imprisonment of 480 months, consisting of consecutive sentences of 240 months on Counts 1 and 2. SHT-II: 33.

After the Judgment was filed on August 25, 2005, Smalls appealed to the Fourth Circuit. The issues raised are set forth in Exhibit 4, which is a Statement of the Issues Presented in the

Brief of Appellant submitted on December 6, 2005. In an unpublished opinion issued on June 13, 2006, all of his arguments were rejected. United States v. Smalls, 2006 WL 1676473 (C.A.4 (S.C)), decided June 13, 2006. The Fourth Circuit stated that " Smalls and his co-defendant murdered Ms. Stoeckle in July 1994 because they believed she was a law enforcement informant," and concluded that her murder, which was carried out in an effort " to silence a suspected informant - was a reasonably forseeable event in furtherance of the conspiracy," and that " application of the murder cross-reference was appropriate."

On June 12, 2007, Smalls submitted a 20 page Motion Under 28 USC § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (" the 2255 Motion") that set forth eight grounds for collateral relief. A 69 page Memorandum of Defendant (" the 2255 Memorandum") was filed that same date. After unsuccessfully seeking to strike that Memorandum (because of its excessive length and in violation of the Local Rules) in a Motion to Dismiss and/or Strike that was filed on July 30, 2007, the United States, in an Order filed on July 31, 2007, was ordered to submit an answer, opposition or other response. Having filed its Answer and Opposition to Motion Under 28 U.S.C. § 2255; Motion for Summary Judgment on November 5, 2007, the Government now submits an Amended Answer and Opposition to Motion Under 28 U.S.C. § 2255; Motion for Summary Judgment and urges that the relief sought by Smalls be denied and that summary judgment be granted to the United States. The Government has submitted copies of Exhibits 1 through 4 that were attached to the original Answer and Opposition; Motion for Summary Judgment and incorporates the originals herein by reference.

## II.    **RULE 5(b) INFORMATION**

As required by Rule 5(b), Rules Governing Section 2255 Proceedings for the United States District Courts, the United States is unaware of any other federal remedy which the defendant has utilized other than the unsuccessful appeals noted above.   No evidentiary hearing has been conducted in this matter and none is required since no issue of material fact is in dispute.

## III.    **DISCUSSION**

**A.    The applicable legal authority establishes that relief pursuant to 28 U.S.C. § 2255 is reserved for a narrow class of cases with the defendant having the burden to prove his claims.**

Section 2255 habeus relief is only available to correct a miscarriage of justice.   United States v. Pregent, 190 F.3d 279 (4th Cir. 1999).   Habeus review is an extraordinary remedy, and it is not available as a substitute for an appeal.   United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001); United States v. Harris, 183 F.3d 313 (4th Cir. 1999).   Claims that could have been raised on appeal, but were not, are waived and may not be asserted in a collateral proceeding absent cause and actual prejudice.   United States v. Frady, 456 U.S. 152, 167-69 (1982); United States v. Timmreck, 441 U.S. 780, 783-85 (1979).

To prevail on his Motion, Smalls must prove a lack of jurisdiction, a constitutional error, or an error that constitutes a fundamental defect which inherently resulted in a complete miscarriage of justice.   28 U.S.C. § 2255; United States v. Addonizio, 442 U.S. 178, 184-85 (1979).   The Supreme Court in Addonizio held that Section 2255 is not available to provide recourse to all who have suffered errors at trial and a distinction is drawn between constitutional or jurisdictional errors and mere errors of law.   Id.   Citing Hill v. United States, 368 U.S. 424, 428 (1962), the Supreme Court further stated that it " has held that an error of law does not

provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.' " <u>Id</u>. at 185.  The burden in a 28 U.S.C. § 2255 proceeding is on the moving party to prove the claims by a preponderance of the evidence.  <u>Vanater v. Boles</u>, 377 F.2d 898, 900 (4th Cir. 1967); <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958).

**B.      The standard of review for the claims of Smalls concerning allegations of ineffective assistance of counsel.**

The standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), governs Sixth Amendment ineffective assistance of counsel claims.  In order to succeed, a criminal defendant must show, first, that he received deficient legal representation, and, second, that the unprofessional errors prejudiced his case.  <u>Id.</u> at 694.  Competency is measured by what an objectively reasonable attorney would have done under the circumstances existing at the time of the representation.  <u>Id.</u> at 687-88.  Every effort should be made to avoid the " distorting effects of hindsight."  <u>Id.</u> at 689.  Because the conduct of counsel carries a strong presumption of reasonableness, reversal is warranted only if the defendant can affirmatively prove prejudice.  <u>Id.</u> at 689, 693.

It is well-settled that Smalls must satisfy both of the <u>Strickland</u> elements, and a failure of proof on either element terminates the inquiry.  <u>United States v. Roane</u>, 378 F.3d 382, 404 (4th Cir. 2004) (citing <u>Williams v. Kelly</u>, 816 F.2d 939, 946-47 (4th cir. 1987)).  In order to establish prejudice under the second prong of <u>Strickland</u>, Smalls must demonstrate that " there is a reasonable probability that, but for counsel' s unprofessional errors, the result of the proceeding would

have been different." Strickland, 466 U.S. at 694. A reasonable probability is a " probability sufficient to undermine confidence in the outcome." Id; see Roane, 378 F.3d at 405.

Any defendant who pled guilty and thereafter alleges ineffective assistance of counsel has an even higher burden to satisfy. Hill v. Lockhart, 474 U.S. 52, 53-59 (1985); Fields v. Attorney General of Maryland, 956 F.2d 1290, 1297-99 (4th Cir. 1992); and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). In Hooper, the Fourth Circuit described the additional burden that a defendant has in a post-guilty plea claim of ineffectiveness on the part of his attorney:

> When a defendant challenges a conviction entered after a guilty plea, [the] " prejudice" prong of the test is slightly modified. Such a defendant " must show that there is a reasonable probability that, but for counsel' s errors, he would not have pleaded guilty and would have insisted on going to trial."

845 F.2d at 475. Accord Hill, 474 U.S. at 59; and Fields, 956 F.2d at 1297.

**C.      As to Grounds 1 through 7 the Government should be granted summary judgment, or the 2255 Motion should be dismissed, due to the defendant' s failure to satisfy his burden of proving prejudice, the second prong of the Strickland standard.**

_____In Grounds 1 through 7 (Arguments I through VII), Smalls seeks collateral relief based upon various allegations of ineffectiveness on the part of Chaplin. 2255 Memorandum: 15-63. With his sentence having been calculated based upon the USSG § 2D1.(d)(1) cross-reference for the murder of Ms. Stoeckle, the Movant fails to recognize that the decision to plead guilty, which is the course in which Chaplin directed him, saved him from receiving a life sentence like Gibbs and permitted him to receive a term of incarceration that will permit his release from federal prison, if he receives credit for good time, prior to reaching the age of 60. In reality, Chaplin, regardless of what Smalls alleges, accomplished a critical set of actions, the signing of a plea

agreement and the entry of guilty pleas, that steered Movant from the fate that befell Gibbs. SHT-II: 28. Relief must be denied on Grounds 1 through 7 since Smalls has clearly failed to meet the burden which is his.

Throughout the entire course of his 20 page Motion and the lengthy 2255 Memorandum, Smalls fails to demonstrate prejudice, specifically, that he would have received a lesser sentence (than the 480 months imposed) even if everything that he alleges as ineffectiveness on the part of Chaplin is true. Instead of establishing prejudice, all that he has done is offer conclusions that prejudice occurred. 2255 Memorandum: 18-19, 22, 27-30, 38, 41, 43, 45, 47, 51-52, 54-58 and 62.[7] An example of the failure of Movant to satisfy his burden of proving that prejudice resulted from Chaplin's actions or omissions is his contention on page 18 that " Chaplin's advice to the defendant prejudiced the defence (sic) because it resulted in an increase in sentence." 2255 Memorandum: 18. That bare statement is not proof that prejudice occurred and is nothing but an unsupported argument. Unfortunately, he has made no effort to show how his sentence was increased.[8] Another example is on pages 27-28 where Smalls concludes that certain efforts by

---

[7]    Importantly, it is noted that Movant has failed allege any prejudice in Argument III. 2255 Memorandum: 31-37. As a result, he made absolutely no attempt to establish the second prong of Strickland. Another curious aspect to that ground is Smalls' reliance on Rule 44 even though he has acknowledged that the Court did not become aware of the alleged conflict until the sentencing hearing. It is beyond comprehension how this Court could be expected to apply Rule 44 to a factual scenario that occurred in May 1999, almost five years before it surfaced at the  sentencing hearing on February 11-13, 2004.

[8]    In addition it is noted that while Chaplin spoke to the prosecutor, he did not speak to Smalls after the trial of Gibbs and Rivers started on January 24, 2000. Therefore, he did not provide ineffective advice concerning the January 26, 2000, admissions that Movant made to the agents, which was the only statement this Court considered at sentencing. It is also worth noting that during his first appeal the Fourth Circuit rejected all of the challenges made by Smalls to the consideration of that statement. Among the rejected arguments was Issue III: that this Court had erred in admitting

Chaplin " were made to (sic) late and as a result had already prejudiced the Defendant." Clearly, Movant has failed to establish how he had already been prejudiced. On a couple of occasions he refers to Chaplin's testimony that in hindsight he might have done something different. 2255 Memorandum: 18, 41 and 46. Unfortunately, Chaplin never testified about what he could have done differently that would have resulted in a lesser sentence for his client, and Smalls fails to establish how a better result could have been obtained. There is simply a complete failure to prove how he has been prejudiced. Thus, for purposes of this discussion, the Government will assume, solely for the purposes of argument, that the allegations made by Smalls concerning Chaplin's alleged incompetence and ineffectiveness are true.[9] Even if Chaplin did not know about the cross-reference or certain other considerations, he still secured a plea agreement that resulted in a sentence of 480 months for his client instead of the life sentence imposed on Gibbs.

One of the critical points that Smalls has not addressed is that between late January 1999, when Chaplin first appeared to represent him, and January 24, 2000, when the trial of Gibbs and Rivers began, there were only two options available to him concerning how to resolve his case. The first was to accept the Government's offer of a plea agreement. The other was to proceed to trial. Even with Chaplin having less experience than might otherwise have been desired, Smalls

---

the January 26, 2000, statement which allegedly "was the result of deficient advice from his attorney." See Exhibit 3.

[9]     As will be discussed <u>infra</u>, there is, of course, a very good argument that by whatever means it was arrived at, the decision of Smalls to plead guilty was the correct course for any competent attorney to have taken. Otherwise, Smalls would have been at trial with Gibbs and Rivers in January 2000 and there is absolutely no reason to believe that he would not have been convicted on every count and received a life sentence that would have been affirmed on appeal. For that matter, he also could have received a life sentence if convicted only of Count 1.

proceeded through a thorough Rule 11 colloquy during which this Court reviewed the plea agreement with Movant and determined that his pleas were entered knowingly and voluntarily. GPHT: 6-37. Although neither the Court or the Government could ever have imagined the tortured course this case would take over the next several years, it should be abundantly clear that the best decision Smalls could have made was to plead guilty. It is noted that even as late as 2004, while represented by Mr. Savage, Smalls never once indicated a desire to withdraw his pleas. That should be an extremely important consideration in refusing Smalls' requested relief since, having always had the opportunity to at least seek to withdraw from the agreement he entered with Chaplin as his attorney, and with eminently competent counsel in the person of Mr. Savage, Movant chose to maintain his pleas. He should not be heard to complain now.

In fact, at no point in his Motion or 2255 Memorandum has he asserted that, but for the alleged errors of Chaplin, there is a reasonable probability that he would have chosen to not plead guilty and would have insisted on going to trial." Hooper, 845 F.2d at 475. It is respectfully submitted that this failure to satisfy his burden requires the denial of collateral relief on Grounds 1 through 7 (Arguments I through VII.)

By virtue of the entry of guilty pleas to Counts 1 and 2, and the delay that resulted from Chaplin' s representation of him, Smalls ended up benefitting from the life sentence that otherwise would have been imposed by virtue of the murder cross-reference.[10] Without the complications

---

[10] A second major point which Smalls has failed to address is that the murder cross-reference prescribed by USSG § 2A1.1 would have applied to his case whether he pled guilty or was convicted at trial. That cross-reference would have been applied whether Chaplin, Mr. Savage or Mark Geragos was his attorney. Smalls simply cannot show how any sentence he would have received would have been less than the 480 months this Court imposed upon him on August 10, 2005.

arising from Chaplin's involvement as his attorney, it is highly probable that Smalls might have been sentenced before Apprendi or prior to the full impact of that decision being known. It is noted that after Gibbs was convicted on all counts on February 3, 2000, he was sentenced to life on June 22, 2000, a little over four and a half months after the trial ended. Had that happened to Smalls, even with guilty pleas having been entered, Movant, who had failed a polygraph concerning his participation in the Stoeckle murder, would have faced the life sentence mandated by USSG § 2A1.1 through the USSG § 2D1.1(d)(1) cross-reference. Prior to Apprendi, both of the counts to which Smalls pled guilty carried a statutory term of imprisonment of 10 years to life. The life sentence prescribed by the Guidelines could have been imposed under the then mandatory system, just as it was in Gibbs' case. As it turned out, however, the problems surrounding Chaplin, and the time that elapsed after the appointment of Mr. Savage, caused the case to be delayed to the point where Smalls received the full benefit of Apprendi, thereby rendering each of the two counts as ones carrying no mandatory minimum or statutory maximum of life; rather, the applicable statutory maximum was 20 years for each of the two counts. In addition, he received the benefit of Booker so that when his case ultimately returned to this Court for re-sentencing on August 10, 2005, Smalls was sentenced under the advisory regime then in effect. SHT-II: 8-9.

The only other option Smalls had in 1999 and early 2000 was to have proceeded to trial with Gibbs and Rivers. As documented above, at that point he would have been charged with Gibbs and Rivers in Counts 1 and 2 of the 3/SI and with Gibbs in Counts 3, 5 and 6. There is no reason to believe that the evidence that led to the conviction of Gibbs and Rivers on all counts would have led to any different result for Smalls. Indeed, to some extent the evidence against

Movant was stronger than that against Gibbs who had made no outright admissions to law enforcement officers or agents. Kevin Mims testified at the trial of Gibbs and Rivers that Smalls left with Ms. Stoeckle and Gibbs in a van the night before Mims learned that she had been killed. After learning that she had been killed, and knowing that the victim had been with Smalls and Gibbs the last time she had been seen alive, Mims went to Movant's house where Smalls was sitting on the porch with a beer and an assault rifle. Smalls proceeded to tell Mims that he (Smalls) had " shot her first and Ben Gibbs shot her after that." According to Mims, Smalls admitted that after he shot her and got in the vehicle that " she was screaming and Ben went back and shot the rest of the bullets and killed her." Mims trial transcript: 16-23. Keith Chisolm testified that Gibbs had always said that Smalls was present for the murder. Chisolm trial transcript: 124. In addition, Byron Sean Young testified that he was present with Gibbs and Smalls a couple of days before the murder when Gibbs disclosed his belief that Ms. Stoeckle was an informant in a state case in which Gibbs was charged with a drug offense. Corroborating, at least in part, the testimony of Mims that Smalls had left in the van with Gibbs and Ms. Stoeckle, Young testified that someone else was present in the van when he saw Gibbs and the victim. Young trial transcript: 32-39. There is absolutely no reason to believe that the jury would have failed to convict Smalls on all counts, just like it did with respect to Gibbs and Rivers. Convicted on five counts, each of which carried a statutory maximum of 20 years and would have been stacked to reach the Guidelines sentence of life based upon the cross–reference, it is respectfully submitted that Smalls would have been sentenced by this Court to life on Counts 1 and 5. Since the five counts, post-<u>Apprendi</u>, would have permitted a sentence of 90 months, it is further submitted that Smalls, like Gibbs, would have had his life sentence affirmed on appeal.

Thus, what Smalls clearly fails to understand is that the efforts of Chaplin in steering him to enter guilty pleas to Count 1 and 2 provided the same representation that any effective counsel would have pursued. Unable to prove that he would have prevailed by proceeding to trial, there is absolutely no way that Smalls, having been involved in a drug-related murder and having failed a polygraph, could have received a sentence less than the 480 months imposed by this Court at the re-sentencing hearing. Regardless of whether Movant's case was Chaplin's first or 100th federal criminal case, the efforts of his attorney are what prevented Smalls from the same fate as Gibbs. Even if all of his allegations about Chaplin are true, Smalls simply cannot establish that he would have received less than 480 months through any other method of handling his case. With the overwhelming trial evidence, a failed polygraph and the proper application of the murder cross-reference, the Movant has not, and cannot, demonstrate how he would have received a sentence less than the one he is currently serving.

Although the results may have been obtained through representation that did not fit the traditional mold, Smalls cannot claim, in the final analysis, that Chaplin failed to provide significant and beneficial assistance to him. Like any competent attorney, Chaplin directed him toward the entry of guilty pleas that ended up, as set forth below, in saving a significant portion of his life from having to be served behind bars. One of the counts was dismissed and Smalls had the opportunity to receive a downward adjustment for acceptance of responsibility as well as a possible motion for a reduced sentence. Chaplin cannot be blamed for Smalls' decision to lie, withhold evidence about important co-conspirators and, ultimately, to fail a polygraph. SHT: 256; PSR, para. 20. In fact, as Chaplin testified at the sentencing hearing, Movant lied to him (Chaplin) by denying that he knew anything about the murder. SHT: 256. Such a falsehood

would have created problems for any attorney in the federal criminal justice system, no matter how competent or experienced.

In the end, because Chaplin represented him and he pled guilty, and because of the delays that resulted, Smalls was eventually able to receive the benefit of <u>Apprendi</u> and have his final sentence imposed under the advisory Guidelines regime that resulted from <u>Booker</u>. Had he not pled guilty and gone to trial with Gibbs and Rivers, Smalls would have received a sentence of at least 60 years,[11] and possibly one, like Gibbs, that would have led to his incarceration for the remainder of his life. Had he pled guilty with another attorney representing him, his lies to counsel and the investigating agents, together with a failed polygraph, would have led to a sentence of at least 480 months, just like he received on August 10, 2005. If, however, there had not been any delay, such as resulted from Chaplin's involvement, it is, again, highly probable that Smalls would have received a life sentence before the principles set forth in <u>Apprendi</u> had been fully developed. Even as recently as March 18, 2005, when the first appeal of Smalls was argued before the Fourth Circuit, Circuit Judge Luttig advanced the position that the statutory range for each of the two counts that Smalls pled to was 10 years to life. If that had been the case, the cross-reference for murder would have led to a life sentence despite the entry of the guilty pleas.

In summary, Movant has not and, indeed, cannot prove that Chaplin's representation was prejudicial with respect to the outcome of the proceedings. Regardless of how ineffective Smalls

---

[11] That is based upon guilty findings on only the three drug counts (Counts 1, 5 and 6) that Gibbs was convicted of (and in which Smalls was charged), each of which, post-<u>Apprendi</u> and <u>Booker</u>, would carried statutory maximum sentences of 20 years.

wants to allege that Chaplin was, his attorney did exactly what most competent attorneys would have done, steered his client to enter a guilty plea. Otherwise, Smalls' only other option was to proceed to trial and there is no reason to believe that Movant, like Gibbs and Rivers, would not have been convicted on each the five counts in which he was named. As with Gibbs, a life sentence would have been imposed, and affirmed on appeal. Having pled guilty, Smalls received a 40 year sentence, one that will permit him, if he behaves himself and receives credit for good time, to be released prior to reaching the age of 60. Unless he develops a terminal illness, Gibbs is not likely to ever see the light of day outside a facility run by the Bureau of Prisons. As a result, Smalls, through his guilty pleas, was benefitted by the representation of Chaplin and, at a minimum, Movant has failed to satisfy his burden of proving the prejudice prong of the <u>Strickland</u> standard.

**D. Summary judgment should be granted to the Government as to Ground 8, or the 2255 Motion should be dismissed, due to the defendant's failure to assert this claim on his direct appeal to the Fourth Circuit Court of Appeals.**

Relief on Small's final claim, that this Court conducted an inadequate Rule 11 proceeding, 2255 Memorandum: 64-69, must be denied for a different reason. That ground is procedurally defaulted since it was not asserted on appeal. As the Fourth Circuit Court of Appeals stated in <u>United States v. Mikalajunas,</u> 186 F.3d 492-93 (4th Cir. 1999) concerning the applicable standard of review:

> In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. The existence of cause for a

> procedural default must turn on something external to the defense,
> such as the novelty of the claim or a denial of effective assistance of
> counsel.  And, in order to demonstrate that a miscarriage of justice
> would result from the refusal of the court to entertain the collateral
> attack, a movant must show actual innocence by clear and
> convincing evidence.

" The scope of review of non-constitutional error is more limited than that for constitutional error;

a non-constitutional error does not provide a basis for collateral attack unless it involves ' a

fundamental defect which inherently results in a complete miscarriage of justice,' or is ' inconsis-

tent with the rudimentary demands of fair procedure." Id. at 495-96.  As a result, Movant must

demonstrate either " cause and actual prejudice" or a miscarriage of justice in order to receive the

relief he seeks.  Id.

It should be evident that Smalls cannot satisfy the requisite standard.  First of all, there is

no requirement in Rule 11 that a district court advise a defendant of the standard of proof[12] that

is to used at sentencing or about " other crimes that were relevant, but not charged in the

indictment." 2255 Motion: 15.  Secondly, this Court, as it has traditionally and always done,

conducted an extensive and extremely thorough inquiry that fully complied with the provisions of

the rule.  During that colloquy, which was a joint proceeding with two co-defendants, Smalls was

specifically advised that the statutory penalties for each of the counts he was pleading guilty to

---

[12] It is important to note that this Court, at sentencing, did not apply the preponderance of the evidence standard but found, beyond a reasonable doubt, that the cross-reference for murder applied. SHT: 347; SHT-II: 31.  Since that cross-reference resulted in the sentence Smalls is serving, his complaint about a lesser standard of proof is irrelevant because no findings as to drug quantity or possession of a firearm led to the term of imprisonment of 480 months that this Court imposed on August 10, 2005.

(Counts 1 and 2) included a mandatory minimum term of imprisonment of 10 years[13] together with a statutory maximum of life. GPT: 12-14, 16-17.

Thirdly, the Court informed Movant and his co-defendants " that the advice that your attorneys give you as to where they think you fall in those Guidelines has got to be based on you telling them the truth about your background." GPH: 18. As documented above, Smalls had lied to his attorney and said that he was not involved in the Stoeckle murder. Denial concerning such horrific conduct is perhaps understandable and there is no reason whatsoever to believe that Movant would have admitted his participation in the murder to another attorney. Clearly, such deception would have severely and negatively impacted the ability of any attorney to represent Movant, and it led to nothing less than the sentence of 40 years that was imposed. This Court correctly warned Smalls and the others that it was " important that all three of you tell your attorneys the truth if you want to be able to rely on them. If you don' t tell them the truth, you might as well not have an attorney to advise you." GPH: 18.

In further reviewing the plea agreements with Smalls and the others, this Court correctly explained that " each of you has committed to tell the Government . . . all law enforcement officers . . . everything you know about any kind of unlawful activity; drug activity or whatever kind of . . . unlawful activity it might be." GPH: 21. The defendants were further advised that if they failed to tell the truth that they could not withdraw from their plea agreements and that the

---

[13]    Specifically, this Court advised Movant that he faced "[a] 20 year minimum term to life," GPH: 14, which was a correct statement since Counts 1 and 2 each carried a 10 year mandatory minimum term of imprisonment, and the Court merely combined them. Shortly thereafter, this Court clarified the mandatory minimum further by indicating that it "wouldn't have to be 20" and that the 120 month mandatory minimums "could run concurrently." GPH: 16-17. Prior to Apprendi, those were the correct statutory penalties (10 to life for each count) for Counts 1 and 2.

Government could declare the agreements void and prosecute them " to the fullest extent of the law." GPH: 21. Concerning other crimes that may have been committed, this Court explained that if another crime had been committed by them that they were required " to tell them about that," even if they had never been accused. GPH: 21-22. Smalls and the others were specifically informed that " [i]f you violate this agreement you' re entering . . . and don' t tell them the truth, then they can even use that against you, because they can really throw the book at you if you don' t tell them the truth. They can use those things like that, that they ordinarily couldn' t have used . . . against you." GPH: 22.

Thus, it should be evident that Smalls was properly advised by the Court of his obligations pursuant to the plea agreement. Having lied to his attorney and the Government prior to pleading guilty, and continuing on that same course after May 20, 1999, Smalls should not now be heard to complain of the consequences that reslted from his chosen path of deception. He was also properly informed concerning the polygraph provision in the plea agreement and what could happen if such an examination was not passed. GPH: 22-23. In addition, Movant informed this Court that he fully understood that the Government was not bound by the obligations contained in the plea agreement if it was determined that Smalls " had some knowledge concerning the murder of Audrey Stoeckle or that you shot her or otherwise caused her death." GPH: 29. Under these facts, including his involvement with Gibbs in the Stoeckle murder, as well as his continuing lies about that subject, it should be apparent and beyond dispute that no attorney could have avoided the consequences of the deception practiced by Smalls, or have obtained a better result than what occurred.

## IV.    CONCLUSION

Based on the foregoing, it is respectfully submitted that relief should be denied on the 2255 Motion.   Upon a consideration of all of the facts, including the participation of Smalls in the horrific murder of Audrey Stoeckle, and his decision to lie about his involvement, it is respectfully submitted that nothing short of a miscarriage of justice would occur if this Court grants any form of relief to Movant.   The sentence Smalls is serving (480 months) is the appropriate penalty for his participation with Gibbs in the brutal murder of a young woman who was executed on the mistaken belief that she was an informant for the police in a drug case.   Summary judgment should be granted to the Government as Terrance L. Smalls has failed to meet his burden.

Respectfully submitted,

REGINALD I. LLOYD
UNITED STATES ATTORNEY
*s:/Robert H. Bickerton*
ROBERT H. BICKERTON (# 1326)
Assistant U. S. Attorney
P.O. Box 876
Charleston, South Carolina 29402
(843) 266-1656

November 8, 2007

### CERTIFICATE OF SERVICE

I hereby certify that I have this date caused one true and correct copy of the within document to be served in the above-captioned case, via the court' s e-noticing system, but if that means failed, then by regular mail, on all parties of record.

REGINALD I. LLOYD
UNITED STATES ATTORNEY
*s:/Robert H. Bickerton*
ROBERT H. BICKERTON (# 1326)