UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION    RECEIVED CLERK'S OFFICE

2017 JAN 18  A 9: 34

DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON, SC

TERRANCE L. SMALLS, movant
VS.
UNITED STATES OF AMERICA
        respondent              case number 9:98-322


**MOVANT'S MOTION TO REDUCE SENTENCE UNDER
TITLE 18 U.S.C. SECTION 3582(c)(2)**

Comes now, movant Terrance L. Smalls acting pro se and do
hereby respectfully move this Honorable Court for the District
of South Carolina (Beaufort Division) through filing Movant's
motion and memorandum of law in support for a sentence reduction.
Pursuant to 18 U.S.C.§ 3582(c)(2), terms of imprisonment imposed
based on a guideline sentencing range that has subsequently been
lowered and made retroactive by the United States Sentencing
Commission under 28 U.S.C § 994(u). Pursuant to these retroac-
tive amendments this would result in a significant reduction in
Mr. Smalls' base offense level for crimes involving cocaine base
(crack) pursuant to 1B1.10. These are to include Amendment 706
of the Two Point reduction of 2007, Amendment 750 (18:1) eighteen
to one Fair Sentencing Act 2011, and Amendment 782 Drugs Minus
Two of 2014. These three Amendments has been effective before and
or on November 1, 2014, and the sentencing factors setforth in
18 U.S.C. § 3553(a) to the extent they are applicable.

1

## HISTORICAL FACTS

Beginning on February 11, 2004 and ending on February 13, 2004, this District Court through the Honorable Sol Blatt, Jr. held a three day sentencing hearing pertaining to counts 1 and 2 of the Superceding indictment against the Movant Mr. Smalls (herein after Mr. Smalls will be referred to as the Movant). In conclusion of that three day sentencing hearing the courts found that the Movants plea agreement stipulations was null and void and by the perponderance of the evidence, the Movant was (1). responsible for 1.5 or more of cocaine base (crack) resulting in a base offense level 38 for drug quantity. (2). Pursuant to 2D1.1(b)(1) the Movant was responsible for possessing a dangerous weapon, a two point enhacement was added creating a level 40 , and (3) Pursuant to 2D1.1(d)(1) the Movant was crossreferenced and base offense level was enhanced to a level 43, a Criminal History category II, which begins at life.

Due to the US Supreme Court decision in U.S. vs. Apprendi the Movant's potential sentence was capped at 480 months. This was due to the plea of guilt to counts one and two of the indictment, and pursuant to U.S.S.G. § 5G1.2(d).

As to count one the drug weight calculation resulted in a level 38. Pursuant to relevant conduct the two point level enhancement for possessing a dangerous weapon....(this was only applicable because the courts found the murder of Audrey Stoeckle to be cross referenced and a firearm was used. There was no additional evidence to support the movant possessed a firearm or a dangerous weapon in the continuance of count 1 or 2.) resulting in a base offense level 40, and the cross reference

pursuant to 2D1.1(d)(1) concluded a base offense level of 43.
This was all done to find a base offense level as to count 1,
conspiracy to possess with intent to distribute and distrib-
ution of cocaine and cocaine base (crack). Title 21 USC § 841
(a)(1) and (b)(1)(C). Pursuant to U.S.S.G. § 5G1.2(d) and
Title 18 USCS § 3553(a) under the post Booker advisory guideline
the courts sentenced the Movant to consecutive maximum statutes
of 20 years each as to count 1 and count 2. in an attempt to
reach the guideline range of life.

### ELIGIBILITY AND QUALIFICATION

Post Booker the guidelines are advisory, but the courts
are still required to use the same approach pre-Booker when
calculating the applicable guideline range to each count for a
defendant's sentence.

As the U.S. Supreme Court explained in Rita v. United
States " a district court should begin all sentencing proceed-
ings by correctly calculating the applicable guideline range.
As a matter of administration and to secure nationwide consis-
tency the guidelines should be the starting point and the init-
ial benchmark. The guidelines are not the only consideration,
however. Accordingly after giving both the parties an opport-
unity to argue for whatever sentence the deem appropriate
the district judge should then consider all of the 18 U.S.C.
§ 3553(a) factors to determine whether they support the
sentence requested by a party." See Rita v. United States
168 L. Ed 2d 203 (2007).

3

As to count 1 the courts made a calculation as to the guidelines starting at a level 38 for drug quantity, 2 points for a firearm, and ending at a level 43 for the 2D1.1(d)(1) cross reference. As to count two there was never a independent sentencing calculation to find the correct starting point. The courts never gave a drug quantity factual finding pertaining to count 2. There wasn't any evidence warranting any enhancements concerning count 2.

If the Movant was indicted under the maximum statute of 21 U.S.C § 841(a), (b)(1)(A) 10 to life for count one, both counts would run concurrent and count one alone would be adequate to reach the objective of a life sentence.

Seeing that the courts were advised pursuant to 5G1.2(d) to sentence each count consecutive, the courts were then required by law to calculate each count based on facts using the guidelines and the factors considered under 3553(a). The courts never stated on record nor through the Presentencing Investigation Report the facts, elements and guideline range it used as to count two.

Under normal sentencing without a cross reference enhancement counts one and two of the Movant's indictment would be grouped together, pursuant to U.S.S.G. § 3D1.2(d). This was originally done by the courts in the P.S.I.R. on page 14 paragraph 35. The courts then decided that Audrey Stoeckles murder was relevant (relevant conduct) and on page 15 paragraphs 37-48 used the 2D1.1(d)(1) cross reference to bring the Movant's base

offense to a level 43, criminal history category II. This started the guideline range at life. The courts last application of the guideline on page 22 paragraph 67 used its discretion and sentencing options applied the U.S.S.G. 5G1.2(d) provisions and sentenced the Movant to consecutive sentences resulting in a 20 year statutory maximums pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(c) as to count 1 and 2.

Once the courts decided to apply 5G1.2(d) the grouping provisions of 3D1.2(d) were negated.

Title 18 U.S.C. § 3584 requires the courts to calculate "as to each offense for which a term of imprisonment is being imposed and the factors set forth in section 3553(a) [ 18 USC § 3553(a) ].

Post Booker the Supreme Court has stated "as a result of the Supreme Court decision the guidelines are now advisory and appellate review of sentencing decisions is limited to determining whether they are "reasonable". The Supreme Courts explanation of "reasonableness" review in the Booker opinion makes it pellucidly clear that a district judge must give serious consideration to the extent of any departure from the guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. For even though the guidelines are advisory rather than mandatory, they are as the Supreme Court pointed out in Rita, the product of careful study based on extensive emperical evidence derived from the review of thousands of individual sentencing decisions." See Gall v. United States 169 L. Ed 2d 445.

Rule 32 (d)(1) especially and specifically (E) requires the courts to "identify any basis for departing from the applicable sentencing range.

Once the courts found that 5G1.2 was applicable and applied this to the Movant's guidelines for consecutive sentence the courts were required by law to calculate each offense count seperately giving each count its own guideline range for reasonableness review.

## ABUSE OF DISCRETION IMPERMISSIBLE DOUBLE COUNTING AND DOUBLE JEOPARDY

In review of the Movant's P.S.I.R. as to drug quantity, relevant conduct etc... pertaining to count (2) two the courts never gave a calculation. 5G1.2(d) does not mandate that each count be sentenced to the statutory maximum without reason and correct guideline calculation as to each count.

Post Booker sentencing, Title 18 U.S.C § 3584, and Rule 32 (d) (E) requires the courts to calculate the correct guidlines as to each count for reasonableness.

If the courts do not calculate these guidelines correctly and sentence without reason the appellate review will be reviewed for abuse of discrection.

"Impermissible Double Counting occurs when one part of the guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the guidelines. See U.S. vs. Ernesto Gallegos 613 F.3d 1211 (2010)(9th cir.)"

The test for the purposes of the Double Jeopardy clause, of

offenses has been stated by the Supreme Court to be whether the
same evidence is required to sustain both offenses. The Supreme
Court stated that the fifth Amendment guaranty against "Double
Jeopardy consists of protection against multiple punishment for
the same offense. See Jones v. Thomas (1989) 105 L. Ed. 2d 322.
The United States Supreme imposed at a single criminal trial,
the role of the constitutional Double Jeopardy guaranty is limi-
ted to assuring that the court does not exceed its legislative
authorization by imposing multiple punishments for the same
offense. See Brown v. Ohio (1973) 53 L. Ed 2d 187. Double Jeopardy
clause of Federal Constitution's Fifth Amendment serves function
of preventing both successive punishments and successive prose-
cutions protection against multiple punishments prohibits govern-
ment from punishing twice or attempting second time to punish
criminally for same offense. United States v. Ursary (1996 US)
135 L. Ed 2d 549.

Once the courts ruled relevant conduct to the murder of Audrey
Stoeckle was applicable to count one and used its discretion to
apply 5G1.2(d) of consecutive sentences and using the same rele-
vant conduct as to count 2 maximizing the 20 year statute, the
Movant's Fith Amendment constitutional right against Double Jeo-
pardy, The Courts Abuse of Discretion, and Impermissible Double
Counting was violated. The Movant asserts that the Courts can
recognize this and move on the Movant's behalf and apply the re-
troactive Amendments of 706, 750, 782 as to counts 1 and 2.

When calculated correctly the Movant would have a two point
deduction for each amendment which would total six points resulting
in Criminal History Category II ending offense level 37 guideline

range of 235-293. The Movant would ask the courts resentence at the bottom end of the guideline range.

## REDUCTION AS TO COUNT 2 SOLEY

On June 27, 2016 the Movant completed his sentence of 240 months as to the elements and relevant conduct as to count one. On June 28, 2016 the Movant began his second consecutive sentence as to count two. Please review the Movant's current Progress Report under "Controlling Sentence Information"

As too count two only the Movant is eligible for the retroactive Amendments of 706, 750, and 782. The courts have the authority to correctly calculate the guidelines as to count two. In review of the information recorded within the PSIR to correctly calculate the guidelines pertaining to drug quantity, the Movant has yet to find an amount that is attributed to him personally to obtain a guilt of possession. To sustain a conviction and calculation as count 2 21: 841(A)(1) and 18:2; Possession With Intent To Distribute, a defendant has to have a personal amount that he is accountable for. In review of the record the Movant has yet to find an amount that attributes guilt to him. In reference to any relevant conduct enhancement and 3553(a) sentencing factors the Movant cannot find any conduct that would enhance his sentence beyondd any final drug calculation found by the courts. The Movant reiterates in review of the records he cannot find any drug amount soley as to count two.

The Movant has clearly completed his consecutive sentence as to count 1 and is serving his sentence only as to count two. The facts and elements surrounding count two does not have any factual basis to sustain a conviction as to count two.

On the date of May 20, 1999 plea colloquy the factual basis for count two presented to the courts through Beaufort County officer Don Annis, there wasn't any evidence or elements to meet a possession conviction. See page 36, lines 9-15 of the transcripts of the plea colloquy. When reviewing the P.S.I.R. The factual basis as to the time frame and elements for possession of count two there's only two individuals that are stating any event to drugs and specifically states somone else possessing those drugs.

(1). Shawn Byron Young makes three seperate statements with all three conflicting. Starting with page 36, lines 9-15 of the May 20, 1999 plea colloquey transcript young states quantities of cookies. Again on page seven, paragraph fourteen of the P.S.I.R. Young states a kilo of cocaine and a kilo of crack specifically in the possession of Keith Chisholm. At the trial of Benjamin Gibbs page seven paragraph fifteen of the P.S.I.R. Young states it is now 2 kilos of crack. These three statements were allegedly the same event, but everytime when interviewed and asked the amount and the drug type in Young's statements has changed. Throughout Young's statements Young has never showed possession as to the Movant. In total Young never possessed these drugs or weighed them himself, so at a total Young is making a guess.

The only other individual that made statements pertaining to count two was Angelo Pringle. On page (8) eight, paragraph (17) seventeen of the P.S.I.R. Angelo Pringle states that he cooked cocaine at the Movant's home in December 1994 - January 1995. Several things contridicts this time frame from Pringle and makes this untrue...as to the time frame.

On page (7) seven, paragraph(16) sixteen, Roderick Chisholm contradicts this time frame from Pringle and the event of this actions from Pringle. Chisholm states that the time frame is the end of 1993 - the begining of 1994. (2). Chisolm specifically said once the drugs were cooked, Pringle gave the drugs to Keith Chisholm. (3). Pringle couldn't have cooked drugs at the Movant's home in December 1994 - January 1995 as the record reflects the Movant's lease had ended and the Movant was living in the Seabrook area as of June 1994. (4). Angelo Pringle states he didn't have any drug transaction with the Movant until after the arrest of Keith Chisholm on this federal indictment, which was in July of 1998. Roderick Chisolm states that the Movant was present once when Pringle cooked drugs at the Movant's home in 1993. Not December 1994 - ja January 1995. Chisholm has the correct time frame because Roderick Chisholm was arrested on August 13, 1994 and in the South Carolina Department Of Corrections until 1997.

The Courts can correctly calculate the guidelines range as to count two. In review of the P.S.I.R. there's no evidence or elements of guilt as to count two. The Courts can consider that the Movant has no factual basis as to count two, and see that the Movant is actually innocent as to count two.

The request of the Movant is that if the courts can't find that the Movant is not actually innocent as to count two, the courts could then see that there's no drug weight attributable to the Movant and start it's guideline calculation at the minimum level pursuant to the U.S.S.G. manual.

The manual in effect at the time of the Movant's indictment was 1998. The U.S.S.G. Manual then and the current Manual now both starts the offense level for the minimum amount of cocaine base at a level 12. The Movant's Criminal History category is a II. The resulting guideline range for this would be 12-18 months. In addition to granting Amendment 782: All Drugs Minus Two, would then have an ending result of a base offense level 10 and guideline range of 8-14 months.

## POST SENTENCING CONDUCT

U.S.S.G. 1B1.10(e)(B)(iii) post-sentencing conduct allows the courts to consider all post conduct of a denfendant. Congress has specifically said "there's no limit on the information a court can consider when looking at the background and conduct of a person for purposes of resentencing". See 18 USC Sec. 3661. In Pepper v. USA, 1315 S.Ct 1229 (2011), the Supreme Court said that 3661 "makes clear post-conviction and post sentencing conduct could support a lower sentence at resentencing". The Supreme Court quoted saying "the punishment should fit the offender and not merely the crime". "If a person's post-conviction and post-sentencing conduct has been ex-employry, a court errs when it fails to consider that conduct, because post-conviction

and post-sentencing conduct is a critical part of a persons history in assessing the likelihood of future criminal behavior.

Since the date of my arrest it has been 18 years. Since the date of my sentencing it has been 13 years. The record clearly reflects exemplory behavior. I've occupied myself with nothing but constructive progress that aids me while being incarcerated and will also be recognized in a free society. Enclosed you will find my most recent progress report, detailing the history of my incarceration.

I've highlighted significant areas for the courts to consider while making its decision in the Movant's request for a sentence reduction. Some of those highlighted areas include disciplinary free conduct, a earned G.E.D., and a Work Keys certification. Under the factors and consideration of 3553(a) I pray that this District Court will see the rehabilitation efforts that the Movant has diligently applied to his daily living since the begining of his incarceration.

Enclosed the courts will find letters from family and community members that has supported and encouraged the Movant into the positive life that he now lives.

If for some reason the Courts rule that the Movant is ineligible for the retro active Amendments of 706, 750, and 782, the Movant asks the Courts grant a downward departure soley on the post-sentencing, and post-conviction rehabilitation, and exemplory conduct of the Movant.

## CONCLUSION

Wherefore the Movant has stated three alternative reas-
ons why the Courts should reduce the Movants sentence.
The Movant moves this District Court of The United States
to reduce his sentence pursuant to the retroactive Amend-
ments 706, 750, and 782 of the U.S.S.G § Manual.

In the alternative the Courts does not rule that the
Movant is eligible as to both counts as a whole, the Courts
could grant the Movant's request as to count two alone.

In the last result the Courts does not see that count
two alone should be reduced, the Movant asks that the Courts
consider the postsentencing, and postconviction rehabilitat-
ion of the Movant and grant a downward departure.

Respectfully Submitted

/s/ *Terrance J. Smalls*

Terrance L. Smalls

49818-019

Fed. Corr. Inst.

P.O. Box 725

Edgefield S.C.

29824

I HERBY CERTIFY that a true copy of the foregoing was furnished by regular U.S Mail, first class postage prepaid, this 12th day of January, 2017 on the following persons: Honorable Sol Blatt Jr.

I declare under penalty of perjury that the foregoing is true and correct executed on the 12th day of January, 2017

/s/ Terrance L. Smalls

TERRANCE L. SMALLS

REG: 49818-019

FED. CORR. INST.

P.O. BOX 725

EDGEFIELD SC

29824

## ENCLOSURE LISTING

(1). Title 18 U.S.C SECTION 3582(c)(2) MOTION


(2). MAY 20, 1999 Plea Colloquy Transcript pages 35-36


(3). PRESENTENCING INVESTIGATION REPORT. Pages 14,15,7,8, and 22.


(4). B.O.P. PROGRESS REPORT.


(5). LETTERS OF RECOMMENDATIONS

RECEIVED CLERK'S OFFICE
2017 JAN 18 A 9: 34
DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON, SC

1  Task Force agents were Rodney Antley, Richard White, Trina

2  Polite, Bessie Shuler, Darrell Lee Taylor, Kevin Mims, Byron

3  Shawn Young, Ronald Wright, who stated that Ivan Jenkins was

4  selling crack cocaine in the Burton and Seabrook, South

5  Carolina areas for Keith Chisolm.

6           Further stated they had purchased crack from or

7  acted -- and/or acted as runners of crack from Ivan Jenkins.

8           For Terrance Smalls:  On February 12th, 1998, Andre

9  Dent stated that he observed Terrance Smalls acting as a

10 lookout for Benjamin Gibbs and Keith Chisolm.  On five

11 occasions.  Observed -- and he also -- on five occasions, he

12 observed Smalls selling crack in the Milledge Village area of

13 Beaufort County.

14          On May 29th, 1998, Byron Shawn Young stated, during

15 the summer of 1995, Young was working for Benjamin Gibbs and

16 Keith Chisolm's organization distributing thousand-dollar

17 packs of crack cocaine four or five times a day to the street

18 sellers.  Stated the leaders of that organization was Keith

19 Chisolm, Benjamin Gibbs, and Terrance Smalls.

20          December 4th, 1998, Ricky Gaines stated that Keith

21 Chisolm was a leader of an organization with two locations of

22 crack being sold to street dealers; the first organization was

23 in Burton, and the second one was in Seabrook, South Carolina.

24          The one in Burton -- the first organization in

25 Burton, South Carolina, Benjamin Gibbs, Terrance Smalls, James

1    Hayward and others were the street dealers.  In Seabrook,

2    South Carolina, the street dealers were Franquilla Byson, Ivan

3    Jenkins, Joey Mulligan, as well as others.

4         During 1996 through 1998, additional individuals

5    interviewed by Task Force agents in reference to their drug

6    activities with Terrance Smalls were Tyrone Moultrie, Ben

7    Gibbs, Trevin Milledge, Trina Polite, Wendell Rivers, Kevin

8    Mims and Darrell Lee Taylor.

9         As to Counts Two:  On or about December 1994 and

10   January of 1995, Byron Shawn Young observed quantities of

11   crack cocaine in the cookie form and cocaine powder in the

12   residence of Keith Chisolm, located on a trailer near Studio 7

13   off Broad River Road in Burton, South Carolina.  Present that

14   day in the trailer were Benjamin Gibbs, Terrance Smalls,

15   Kimberly Betty, and Angelo Pringle, known as Lish.

16        THE COURT:  All right.  Now, Mr. Byson, you heard

17   what the Agent told the Court in regard to your activities.

18   Is -- was that substantially true and correct?

19        DEFENDANT BYSON:  Yes, sir.

20        THE COURT:  Mr. Jenkins, you heard what he said

21   about you.  Was that substantially true and correct?

22        DEFENDANT JENKINS:  Yes, sir.

23        THE COURT:  Mr. Smalls, you heard what he said about

24   you.  Was that substantially true and correct?

25        (Inaudible.)

14. On May 22, 1998, Byron Shawn Young was interviewed at the Ridgeland Correctional Institution by investigating agents, regarding his involvement in and knowledge of illegal narcotics trafficking activities in the Burton area. Specifically as to the defendant, **Terrance Smalls**, Byron Young stated that Keith Chisolm was the leader of the group distributing drugs in Beaufort County, and that codefendants Benjamin Gibbs and **Terrance Smalls** were below Keith Chisolm and were of equal status. Young recalled an incident that occurred during the summer of 1995 when he received a quarter ounce of "crack" (**7 grams**) from Keith Chisolm. Also present during this drug transaction were codefendants Benjamin Gibbs, **Terrance Smalls**, and James Hayward. Byron Young recalled another incident which he believed occurred at the end of 1994 when he personally observed 2 kilograms of cocaine in the possession of Keith Chisolm. According to Young, he was picked up by Benjamin Gibbs and **Terrance Smalls** and the three of them drove to Keith Chisolm's trailer where he observed the drugs on a table. Young recalled that there was "at least one kilogram of 'crack' and approximately one kilogram of powder cocaine on the table in plastic bags." Present at this time were as mentioned, Benjamin Gibbs and **Terrance Smalls**. The information contained in this paragraph comprises the details as to Count 2 of the Second Superseding Indictment.

15. The above statement given by Byron Shawn Young is corroborated by his own testimony given on January 27, 2000, during the trial of Benjamin Gibbs and Wendell Rivers. When asked upon direct examination by the Assistant U.S. Attorney in this case as to his knowledge of and involvement in the drug trafficking activities during the time period of 1994 and 1995, Young provided the following information. Young was asked, "during this period of time, what is the largest amount of drugs you ever saw at any one location at one time?" to which Young replied, "at Keith Chisolm's trailer...I was in this trailer and I seen at least 2 kilos of crack cocaine." When asked who was there, Young testified, "**Terrance Smalls**, Keith Chisolm, Benjamin Gibbs, Jamal Nix, and this guy Gamlich." (Tr. p. 22, ll.14-25; p. 23, l. 1).

16. On January 30, 2001, Roderick Chisolm (9:99-687) was interviewed by Task Force agents pursuant to a proffer agreement. Chisolm advised that during late 1993 or early 1994, Angelo Pringle began making trips to Beaufort, S.C. with drugs and Roderick Chisolm was present when Pringle brought the drugs to **Terrance Smalls'** trailer located at Saul's Trailer Park in Burton. According to Roderick Chisolm, he, Keith Chisolm, and **Terrance Smalls** all resided at the mobile home at that time. On that particular occasion, in late 1993, or early 1994, Angelo Pringle brought 1 to 1 ½ ounces of crack to the trailer and gave it to Keith Chisolm. Roderick Chisolm advised that several times when Angelo Pringle came to Beaufort, he cooked crack at the aforementioned trailer and he specifically recalled one occasion when **Terrance Smalls** was present, when approximately a 9 ounce quantity of crack was cooked. Later in his interview, Roderick Chisolm advised agents that **Terrance S malls** and Angelo Pringle were first cousins. Reportedly after Keith Chisolm, a codefendant in this

7

conspiracy, was arrested in July 1998, Roderick Chisolm began purchasing drugs from **Terrance Smalls**. Chisolm stated that he understood **Smalls** got the drugs from Angelo Pringle, although he never witnessed any transactions between **Smalls** and Pringle. Chisolm advised that he purchased drugs from **Terrance Smalls** from approximately 1998 until **Smalls'** arrest in January of 1999. The largest amount of drugs Roderick Chisolm got from **Smalls** at a time was 1/4 kilogram of crack (250 grams). The total amount of crack Roderick Chisolm received from **Smalls** was approximately 1 kilogram over a four to five month period.

17. On February 5, 2003, Angelo Pringle was interviewed by Task Force agents subsequent to notification being given to the Assistant Public Federal Defender regarding the interview of Pringle. Pringle's interview on February 5, 2003, corroborated much of the above information given by Roderick Chisolm. Specifically, Pringle confirmed that he and **Terrance Smalls** were first cousins. Angelo Pringle advised that during 1994 through 1995, he cooked cocaine into crack at **Terrance Smalls'** trailer located in Saul's Trailer Park over a four or five month period of time. Pringle brought quantities ranging from 2 to 3 ounces up to 9 ounces of cocaine to **Smalls'** trailer for cooking. Pringle estimated that he cooked approximately **1 kilogram** of cocaine into crack during that time frame (this information exactly corroborates that given above by Roderick Chisolm). Angelo Pringle stated that during 1998, Keith Chisolm went to jail and afterwards, **Terrance Smalls** called Pringle looking for drugs and purchased 1 kilogram of cocaine. Pringle provided information regarding another transaction of 3 kilograms of cocaine between he and **Smalls**, and yet another purchase for 1 kilogram of cocaine. According to Angelo Pringle, over the next five months until **Terrance Smalls** was arrested, Pringle provided **Smalls** with approximately 18 ounces of crack and an additional 8 kilograms of powder cocaine. Pringle advised that **Smalls** purchased 1 to 3 kilogram quantities of cocaine at a time from him and that the purchases occurred between August 1998 and February 1999, as **Terrance Smalls** was incarcerated over the Super Bowl weekend in January 1999.

18. On May 21, 2003, Keith Chisolm, a codefendant in the instant conspiracy, was interviewed by Task Force agents as part of his ongoing cooperation with the Government. Keith Chisolm spoke about his drug dealing activities around the 1997-1998 time period. Chisolm advised that **Terrance Smalls** told him that Carl Linyard was the drug dealer with whom **Smalls** dealt on St. Helena and Lady's Islands. However, Chisolm advised that he and **Smalls** also engaged in some drug transactions. According to Keith Chisolm, he dealt 1/4 kilo to ½ kilogram quantities of crack to **Terrance Smalls** more than ten times on occasions when **Smalls** requested the crack for someone "on the island". On at least five of the ten occasions, **Smalls** specifically said the crack was for Carl Linyard. On each of those occasions, Keith Chisolm gave **Terrance Smalls** 9 ounces (approximately 250 grams) of crack or cooked 9 ounces of crack for

8

being raised by her and her husband.  Mrs. Smith added that her husband of
forty years will now have to work until he is 73 years old in order to get Audrey's
youngest son, Jacob, through college.  Finally, Audrey's brother, Richard, related
to the heartache of his sister's ultimate demise as a result of her drug addiction
and explained that the healing process will take a lifetime.   The emotional scars
of the victim's family run deep, however, the long range impact of Audrey
Stoeckle's death upon her surviving family can only be surmised.

31.     As to the defendant's involvement in distributing a substantial amount of "crack",
        there are no identifiable victims for purposes of restitution.

        **Adjustment for Obstruction of Justice**

32.     The Probation Officer has no information to suggest that the defendant impeded
        or obstructed justice.

        **Adjustment for Acceptance of Responsibility**

33.     During an initial interview with the U.S. Probation Officer, Terrance Smalls
        acknowledged his involvement in the instant offense, that is, the distribution of
        "crack".  As evidenced by his initial interview with agents and his continued
        cooperation, the U.S. Probation Officer believes the defendant has accepted
        responsibility in relation to his drug distribution activities.  However, based upon
        further information obtained as a result of the ongoing investigation in this case,
        as well as the conviction of codefendant Ben Gibbs and testimony revealed at
        his trial, the U.S. Probation Officer interviewed Terrance Smalls a second time,
        on May 4, 2000.   Smalls was provided with copies of his DEA interviews,
        including details of the polygraph exam and his most recent interview of January
        26, 2000.  Mr. Smalls was asked about his own admission of being present at
        the time of the murder of Audrey Stoeckle, as well as his failure to pass a
        polygraph examination regarding Stoeckle's murder, to which he remained silent.

        **Offense Level Computations**

34.     The 2003 edition of the Guidelines Manual has been used in this case because it
        is currently in effect and is no more punitive than the edition that was in effect
        when the offense was committed.

        Count One - Conspiracy to Possess With Intent to Distribute and
        Distribution of Cocaine and Cocaine Base ("Crack")

        Count Two - Possession With Intent to Distribute Cocaine Base or "Crack"

35.     Pursuant to U.S.S.G. § 3D1.2(d), as the offense level is determined largely on
        the quantity of substance involved, Counts 1 and 2 are grouped together.

14

36.     **Base Offense Level:** The United States Sentencing Commission Guideline for violation of 21 U.S.C. § 841(a)(1) and 846 is U.S.S.G. § 2D1.1 and calls for a base offense level of 38   for offenses involving more than 1.5 kilograms of "crack" cocaine.                                                                                    <u>38</u>

37.     **Specific Offense Characteristic:** Pursuant to U.S.S.G. 2D1.1(b)(1) as a dangerous weapon was possessed, two levels are added.
                                                                                                                                    <u>+2</u>

38.     **Cross-Reference:** Pursuant to U.S.S.G. § 2D1.1(d)(1), as a victim was killed under circumstances that would constitute murder under 18 USC § 1111, had such killing taken place within the territorial or maritime jurisdiction of the United States, apply Section 2A1.1, First Degree Murder.

39.     **Offense Level (Cross-Reference):** Pursuant to U.S.S.G. § 2A1.1, First Degree Murder, as cross-referenced above, calls for a base offense level of 43, rather than the lower offense level calculated above.                                        <u>43</u>

40.     **Specific Offense Characteristic:** None.                                                                    <u>0</u>

41.     **Victim-Related Adjustments:** None                                                                        <u>0</u>

42.     **Adjustments for Role in the Offense:** None                                                           <u>0</u>

43.     **Adjustment for Obstruction of Justice:** None.                                                        <u>0</u>

44.     **Adjusted Offense Level (Subtotal)**                                                                       <u>43</u>

45.     **Adjustment for Acceptance of Responsibility:** None.                                           <u>0</u>

46.     **Adjusted Offense Level:**                                                                                          <u>43</u>

47.     **Chapter Four Enhancements:** None                                                                       <u>0</u>

48.     **Total Offense Level:**                                                                                              <u>43</u>


**PART B. DEFENDANT'S CRIMINAL HISTORY**

**<u>Juvenile Adjudications</u>**

49.     None


15

## PART D. SENTENCING OPTIONS

### Custody

66.   **Statutory Provisions:**  The maximum term of imprisonment as to each of Counts 1and 2 is 20 years, pursuant to 21 U.S.C. § 841(a)(1) and (b)(1)(C).

67.   **Guideline Provisions:**  Pursuant to Chapter 5, Part A , based on a total offense level of 43 (as shown via cross-reference) and a criminal history category of III, the guideline range for imprisonment is LIFE.  However, as the statutory maximum term of imprisonment as to each of Counts 1 and 2 is 20 years, the guideline range becomes 480 months, pursuant to U.S.S.G. § 5G1.2(d).

### Impact of the Plea Agreement

68.   Pursuant to paragraphs 5, 6, 11, and 14 of the defendant's Plea Agreement, it appears that the defendant has breached his agreement with the government in a number of ways.  Smalls has failed to comply with his obligations set forth in paragraph 5 of his Plea Agreement insofar as he has not been "fully truthful and forthright" and accordingly, did not "fully disclose and provide truthful information."  Furthermore, Terrance Smalls ultimately failed a polygraph administered to him.   In light of the defendant's clear violation of paragraphs 5 and 6 of his Plea Agreement, as well as the government being relieved of its obligations as set forth in paragraph 14, it is clear that Smalls has breached his Plea Agreement.

### Supervised Release

69.   **Statutory Provisions:**  A term of at least three years supervised release is required as to Counts 1 and 2 if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. § 841(b)(1)(C).

70.   **In accordance with 18 U.S.C. § 3583(d), the following conditions are mandatory conditions of supervision:**  (1) The defendant shall not commit another federal, state, or local crime; (2) The defendant shall not unlawfully possess a controlled substance; and (3) The defendant shall refrain from any unlawful use of a controlled substance and submit to a drug test within fifteen days of release on supervised release and at least two periodic drug tests thereafter (as determined by the Court).  This condition may be ameliorated or suspended as provided in Title 18 U.S.C. § 3563(a)(5).  (Effective only for offenses committed on or after September 13, 1994.)

71.   Revocation of supervised release is mandatory if the defendant violates a condition of supervised release for possession of a controlled substance, possession of a firearm, or refusal to comply with drug testing, 18 U.S.C. §



| | | | |
|---|---|---|---|
| **Name:** | SMALLS, TERRANCE | **Institution:** | EDGEFIELD FCI |
| **Register Number:** | 49818-019 | | P.O. BOX 723 |
| **Security/Custody:** | MEDIUM/IN | | EDGEFIELD, SC 29824 |
| **Projected Release:** | 11-29-2033 / GCT REL | **Telephone:** | (803) 637-1500 |

| | | | |
|---|---|---|---|
| **Next Review Date:** | 01-27-2017 | **Driver's License/State:** | / |
| **Next Custody Review Date:** | 03-28-2017 | **FBI Number:** | 806250RA0 |
| **Age/DOB/Sex:** | 43 / 10-29-1973 / M | **SSN:** | 250578647 |
| **CIM Status:** | Y | **DCDC Number:** | |
| | If yes, reconciled: Y | **INS Number:** | |
| | | **PDID Number:** | |
| | | **Other IDs:** | |

| | | | |
|---|---|---|---|
| **Release Residence:** | Cynthia Smalls, Sister | **Release Employer:** | *[Name]* |
| | P. O. BOX 4433 | | *[Address]* |
| | BEAUFORT, SC 29903 | **Contact** | *[POC]* |
| **Telephone:** | (843) 846-5735 | **Telephone:** | |

| | | | |
|---|---|---|---|
| **Primary Emergency Contact:** | Cynthia Smalls, Sister | **Secondary Emergency** | *[POC]* |
| | P.O. Box 4433 | **Contact:** | *[Address]* |
| | Beuafort, SC 29903 | **Telephone:** | |
| **Telephone:** | (843) 846-5735 | | |

**Mentor Information:**

**Controlling Sentence Information:**

| Offense(s)/Violator Offenses | Sentence | Sentencing Procedure | Supervision Term |
|---|---|---|---|
| CT. 2 - 21:841(A)(1) AND 18:2; PWITD COCAINE BASE OR "CRACK" AND AIDING AND ABETTING. | 240 MONTHS | 3559 VCCLEA NON-VIOLENT SENTENCE | 3 YEARS |

**Other Current Offenses:**

| |
|---|
| CT. 1 - 21:841(A)(1); CONSP TO PWITD AND DISTRIBUTION OF |
| COCAINE AND COCAINE BASE (CRACK). |

| Controlling Sentence Began | Time Served/Jail Credit/Inoperative Time | Days GCT/EGT/SGT | Days FSGT/WSGT/DGCT | Parole Status | |
|---|---|---|---|---|---|
| 06-28-2016 | 6 MONTHS 2 DAYS / 0 / 0 | 941 / 0 / 0 | 0 / 0 / 0 | **Hearing Date:** **Hearing Type:** **Last USPC Action:** | NOT ENTERED |

**Detainers:**    N

**Special Parole Term:** NOT ENTERED
**Pending Charges:**   None known
**Cim Status:**   Y            **Cim Reconciled:**   Y

| Financial Responsibility | Imposed | Balance | Case No./Court of Jurisdiction | Assgn/Schedule Payment |
|---|---|---|---|---|
| ASSESSMENT USDC | $200.00 | $0.00 | 9:98-322(27)/District of South Carolina | FINANC RESP-COMPLETED $30.00 QUARTERLY |

| | | |
|---|---|---|
| **Financial Plan** | **Comm Dep-6 mos:** | $2375.31 |
| **Active:**   N | **Commissary** | |
| **Financial Plan Date:** 02-25-2005 | **Balance:** | $995.82 |

**Payments**

| | |
|---|---|
| Commensurate: | Y |
| Missed: | N |

| | |
|---|---|
| **Judicial Recommendations:** | FCI Edgefield / None / DST to Jesup, Georgia |

| | |
|---|---|
| **Special Conditions of Supervision:** | Participate in a program of testing and treatment of substance abuseuntil such time as released by the probation officer. |

| | | | |
|---|---|---|---|
| **USPO Sentencing:** | Dickie Brunson, Chief<br>South Carolina Probation Office<br>Strom Thurmond Federal Building<br>1835 Assembly Street Room 611<br>Columbia, SC 29201-2445 | **USPO Relocation:** | [POC]<br>[District]<br>[Street Address/Suite]<br>[City], [State] [Zip] |
| **Phone/Fax:** | 803-253-3310 / 803-253-3311 | **Phone/Fax:** | [Phone] / [Fax] |

| | | | |
|---|---|---|---|
| **Subject to 18 U.S.C. 4042(B) Notification:**<br>• Conviction for a drug trafficking crime (federal) | Y | **DNA Required:**<br>**Subject to Sex Offender Notifications:**<br>**Treaty Transfer Case:** | Y - 05-27-2010<br>N<br>N |

| | |
|---|---|
| **Profile Comments:** | None |

### EDUCATION DATA

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| EDG | GED EARNED | GED EARNED IN BOP | 03-10-2005 | CURRENT |
| EDG | ESL HAS | ENGLISH PROFICIENT | 09-09-2004 | CURRENT |

### COMPLETED EDUCATION COURSES

| Course Description | Completion Date | Course Hours |
|---|---|---|
| WORKKEYS PROGRAM M-TH 9-10:30 | 07-28-2014 | 30 |
| SPANISH 1A ACE | 09-24-2012 | 24 |
| STOCK BROKER ACE CLASS - FCI | 09-13-2011 | 24 |
| RPP1 - AIDS AWARENESS | 03-16-2010 | 1 |
| MB TYPING I MON & WED | 05-14-2007 | 24 |
| SMALL APPLIANCE REPAIR NOCTI | 01-19-2007 | 115 |
| SMALL APPLIANCE VT | 11-03-2006 | 176 |
| SMALL APP VT REFRIGERATION | 09-14-2006 | 167 |
| GEOGRAPHY TUES 6-8 | 08-07-2006 | 24 |
| EXPLORE SM APPL 9:00-10:30 AM | 04-19-2006 | 100 |
| INTRO TO REAL ESTATE | 03-30-2006 | 24 |
| SOCIAL SERVICES FAIR-PARENT | 11-18-2005 | 2 |
| SOCIAL SERVICES FAIR-PARENT | 11-30-2005 | 1 |
| ASTRONOMY II THUR 6-8 | 11-05-2005 | 24 |
| ADVANCED PARENTING | 11-02-2005 | 14 |
| ASTRONOMY MON 6-8P | 07-07-2005 | 24 |

| | | | |
|---|---|---|---|
| CULART VT, NOCTI CERT PHASE | | 07-05-2005 | 100 |
| CULINARY VT SERV SAFE MTF | | 06-02-2005 | 100 |
| EXPLORATORY CULINARY ARTS | | 05-04-2005 | 100 |
| BEGINNING PARENTING | | 03-31-2005 | 22 |
| CDL MAIN INSTITUTION | | 03-14-2005 | 24 |
| ADV GED2, MWF, 9:00-10:30 AM | | 02-17-2005 | 72 |
| SOCIAL SERVICES FAIR-PARENT | | 11-18-2004 | 2 |
| ADVANCED AEROBICS | | 10-24-2004 | 48 |

## HIGH TEST SCORES

| Test | Subtest | Score | Test Date | Test Facl | Form | State |
|---|---|---|---|---|---|---|
| ABLE | VOCABULARY | 13.00 | 09-20-2004 | EDG | F | |
| ABLE | SPELLING | 13.00 | 09-20-2004 | EDG | F | |
| ABLE | LANGUAGE | 8.70 | 09-20-2004 | EDG | F | |
| ABLE | READ COMP | 13.00 | 09-20-2004 | EDG | F | |
| ABLE | PROB SOLV | 13.00 | 09-20-2004 | EDG | F | |
| ABLE | NUMBER OPR | 9.60 | 09-20-2004 | EDG | F | |
| GED | SOC STUDY | 580.00 | 01-21-2005 | EDG | IB | |
| GED | SCIENCE | 570.00 | 01-21-2005 | EDG | IB | |
| GED | MATH | 500.00 | 01-21-2005 | EDG | IB | |
| GED | LIT/ARTS | 610.00 | 01-21-2005 | EDG | IB | |
| GED | WRITING | 600.00 | 01-21-2005 | EDG | IB | |
| GED | AVERAGE | 572.00 | 01-21-2005 | EDG | PASS | |
| TABE A | MATH COMP | 1.80 | 01-28-2014 | EDG | 9 | |
| TABE A | MATH APPL | 12.90 | 07-28-2014 | EDG | 10 | |
| TABE D | READING | 12.90 | 01-28-2014 | EDG | 9 | |
| TABE D | BATTERY | 5.90 | 01-28-2014 | EDG | 9 | |
| TABE D | TOTAL MATH | 2.10 | 01-28-2014 | EDG | 9 | |
| TABE D | LANGUAGE | 9.20 | 01-28-2014 | EDG | 9 | |

## WORK DATA

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| EDG | UNICOR 7 | ASSEMBLY 3 (7:30 AM - 3:30 PM) | 06-19-2014 | CURRENT |

## WORK HISTORY

| Facility | Assignment | Work Assignment Description | Start Date | Stop Date |
|---|---|---|---|---|
| EDG | UNICOR 5 | ASSEMBLY 1 | 11-13-2013 | 06-19-2014 |

| EDG | UNICOR 1 | BUSINESS OFFICE & Q.A. | 01-10-2013 | 11-13-2013 |
|---|---|---|---|---|
| EDG | UNI UNASSG | UNICOR UNASSIGNED | 01-05-2013 | 01-10-2013 |
| EDG | UNICOR 1 | BUSINESS OFFICE & Q.A. | 12-01-2008 | 01-05-2013 |
| EDG | UNICOR AM | TRAINING DETAIL MORNING | 11-18-2008 | 12-01-2008 |
| EDG | UNICOR 4 | UTILITY SHIRTS | 11-15-2008 | 11-18-2008 |
| EDG | UNICOR 7 | TEXTILE REPAIR | 07-31-2008 | 11-15-2008 |
| EDG | UNICOR 3 | RCC | 12-09-2007 | 07-31-2008 |
| EDG | UNICOR 7 | TEXTILE REPAIR | 07-10-2007 | 12-09-2007 |
| EDG | UNICOR 4 | UTILITY SHIRTS | 04-03-2007 | 07-10-2007 |
| EDG | UNICOR 7 | TEXTILE REPAIR | 03-23-2007 | 04-03-2007 |
| EDG | ELECTRIC 1 | ELECTRIC SHOP, H. CRAWFORD | 02-16-2007 | 03-23-2007 |
| EDG | UNICOR 9 | UNICOR-INMATE SHIRTS | 01-12-2007 | 02-06-2007 |
| EDG | UNICOR 4 | UTILITY SHIRTS | 12-02-2006 | 01-12-2007 |
| EDG | UNICOR AM | TRAINING DETAIL MORNING | 09-22-2006 | 12-02-2006 |
| EDG | ELECTRIC 1 | ELECTRIC SHOP, H. CRAWFORD | 08-23-2004 | 09-22-2006 |
| | | Gap(s) in employment during assignment: 39 days | | |
| TAL | JAIL | WORK ASSG (A-PRE/A-HLD) | 05-27-2004 | 07-15-2004 |

## DISCIPLINE HISTORY

| UDC / DHO | Hearing Date | Report No. | Prohibited Act / Description | Sanction |
|---|---|---|---|---|
| Inmate has no disciplinary history items in this area | | | | |

## MOVEMENT DATA

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| EDG | A-DES | DESIGNATED, AT ASSIGNED FACIL | 08-17-2005 | CURRENT |

## MOVEMENT HISTORY

| Facility | Assignment | Start Date | Stop Date |
|---|---|---|---|
| Inmate has no movement history items in this area | | | |

## CASE MANAGEMENT ASSIGNMENTS

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| EDG | RPP PART | RELEASE PREP PGM PARTICIPATES | 03-01-2010 | CURRENT |
| EDG | V94 CDA913 | V94 CURR DRG TRAF ON/AFT 91394 | 08-31-2004 | CURRENT |

## MEDICAL DUTY STATUS ASSIGNMENTS

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|

| EDG | REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 08-19-2005 | CURRENT |
|-----|----------|-------------------------------|------------|---------|
| EDG | NO F/S   | NO FOOD SERVICE WORK          | 06-23-2004 | CURRENT |



**ACADEMIC**            *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|---|---|
| ✓ | **INTELLECTUAL FUNCTIONING**<br>⊕ no intellectual deficits<br>ⓘ has NOT attended special education classes |
| ✓ | **LITERACY**<br>⊕ GED obtained<br>ⓘ obtained through BOP |
| ✓ | **LANGUAGE**<br>⊕ fluent in English as primary language |
| ❗ | **COMPUTER SKILLS**<br>⊕ possesses keyboarding skills<br>⊖ lacks word processing skills<br>⊖ lacks internet navigation skills |

## ACADEMIC        *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
| --- |

PREVIOUS PROGRESS REPORT: 20160426

PREVIOUS PROGRESS REPORT: 20130823

PREVIOUS PROGRESS REPORT: 20100823

PREVIOUS TEAM: 20081210

Recommend ACE, VT and rec programs. Enroll in any mentioned NLT March, 2009.

Recommend ACE, VT, Job Skills, Keyboarding classes. Enroll in any mentioned class NLT September, 2008.

PREVIOUS TEAM: 20090603

Recommend ACE, VT and Rec programs. Enroll in any mentioned NLT September, 2009.

PREVIOUS TEAM: 20091118


PREVIOUS TEAM: 20100512

Recommend VT. ACE and Rec programs. Enroll in any mentioned program NLT August. 2010.

PREVIOUS TEAM: 20101117


PREVIOUS TEAM: 20110427


PREVIOUS TEAM: 20111019

Recommend ACE, VT and Rec programs. Enroll in any mentioned program NLT Jan. 2012.

Recommend ACE, VT and Rec programs. Enroll in any mentioned NLT August, 2011.

PREVIOUS TEAM: 20120411

Recommend ACE, VT and REC Programs. Enroll in any mentioned class NLT July, 2012.

PREVIOUS TEAM: 20121003


PREVIOUS TEAM: 20130327


CURRENT:

Recommend ACE, VT and Rec Programs. Enroll in any mentioned class NLT July, 2013.

PREVIOUS TEAM: 20130918

Recommend ACE, VT and Rec Programs. Enroll in any mentioned class NLT July, 2013.

PREVIOUS TEAM: 20140313


PREVIOUS TEAM: 20140828

## ACADEMIC     \*\*\* Disregard Response Summary and utilize only the Progress & Goals section \*\*\*

Recommend ACE, VT and Recreation programs. Enroll in any class NLT July, 2014.

PREVIOUS TEAM: 20150219

PREVIOUS TEAM: 20150813

Recommend ACE, VT and Rec Programs. Enroll in any mentioned program NLT Nov., 2015.

PREVIOUS TEAM: 20160208

Recommend ACE, VT and Rec programs. Enroll in any mentioned program NLT 5/2016.

Recommend ACE, VT and Recreation programs. Enroll in any program NLT Nov., 2015.

PREVIOUS TEAM: 20160801

## VOCATIONAL/CAREER     \*\*\* Disregard Response Summary and utilize only the Progress & Goals section \*\*\*

| Status | Response Summary |
|---|---|
| ❗ | **EMPLOYMENT HISTORY**<br>ⓘ employed at time of arrest<br>⊖ no consistent history of employment 5 years prior to incarceration<br>ⓘ sporadic history of employment (frequent, non-promotional job changes) |
| ❗ | **CAREER DEVELOPMENT**<br>⊖ does not possess significant expertise in field<br><br>⊖ no realistic career/job goals upon release |
| ✔ | **INSTITUTION WORK HISTORY**<br>⊕ has a consistent institution work history<br>Eval: 09-30-2015 Outstanding<br>Eval: 08-30-2015 Outstanding<br>Eval: 07-30-2015 Outstanding<br>Eval: 06-30-2015 Outstanding<br>Eval: 05-30-2015 Outstanding<br>Eval: 04-30-2015 Outstanding |
| ❗ | **POST INCARCERATION EMPLOYMENT**<br>⊖ post-incarceration employment not secured<br>ⓘ other: Lengthy Sentence.<br><br>⊖ no release documents obtained to date |

## VOCATIONAL/CAREER   *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
|---|

PREVIOUS PROGRESS REPORT: 20160426

PREVIOUS PROGRESS REPORT: 20130823

PREVIOUS PROGRESS REPORT: 20100823

PREVIOUS TEAM: 20081210

Complete a Higher Educational Program work through next Team/Release. Complete a Vocational Training Program work through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write and call through release.

Complete a Higher Educational program work through next Team/Release. Complete a Higher Vocational Training Program work through next Team/Release. Stay gainfully employed through next Team/Release. Save 25.00 monthly and at least 1000.00 for release.

PREVIOUS TEAM: 20090603

Complete a Higher Educational Program work through next Team/Release. Complete a Vocational Training Program work through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Stay gainfully employed through next Team/Release.

PREVIOUS TEAM: 20091118

Complete a Higher Educational Program work through next Team/Release. Complete a Vocational Training Program work through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Stay gainfully employed through next Team/Release.

PREVIOUS TEAM: 20100512

Complete a Higher Educational Program work through next Team/Release. Complete a Vocational Training Program work through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Stay gainfully employed through next Team/Release.

PREVIOUS TEAM: 20101117

Complete a Higher Educational Program, recommend college level courses, work through next Team/Release. Complete a Vocational Training Program, recommend UNICOR QA Program. Save 25.00 monthly and at least 1000.00 for release. Stay gainfully employed in UNICOR through next Team/Release.

PREVIOUS TEAM: 20110427

Complete a Higher Educational Program, recommend college level courses, work through next Team/Release. Complete a Vocational Training Program, recommend UNICOR QA Program. Save 25.00 monthly and at least 1000.00 for release. Stay gainfully employed in UNICOR through next Team/Release.

PREVIOUS TEAM: 20111019

Complete a Higher Educational Program, recommend College Level Courses. Complete a Vocational Training Program, recommend UNICOR QA Program. Save 25.00 monthly and at least 1000.00 for release. Stay gainfully employed in UNICOR through next Team/Release.

PREVIOUS TEAM: 20120411

Complete a Higher Educational Program, recommend College level Courses, work through next Team/Release. Complete a Vocational Training Program, recommend  UNICOR QA or the Culinary Arts Program. Save 25.00 monthly and at least 1000.00 for release. Stay gainfully employed in UNICOR through next Team/Release.

PREVIOUS TEAM: 20121003

Complete any Higher Educational Program, recommend College level Courses at Ashworth, work through next Team/Release. Complete a Vocational Training Program, recommend UNICOR QA, Culinary Arts or a Facilities Trade Program. Start saving 25.00 monthly and at least 10000.00 for release. Stay gainfully employed in UNICOR through next

## VOCATIONAL/CAREER    *** Disregard Response Summary and utilize only the Progress & Goals section ***

Team/Release.

PREVIOUS TEAM: 20130327

Complete any Higher Educational Programs, recommend College Level Courses, work through next Team/Release. Complete a Vocational Training Program, recommend CDL License, UNICOR QA, or a Facilities Trade Program. Continue saving 25.00 monthly and at least 1000.00 for release. Stay gainfully employed in UNICOR through next Team/Release.

PREVIOUS TEAM: 20130918

Complete any Higher Educational Programs, recommend Ashworth College Program. Complete a Vocational Training Program, recommend CDL License, UNICOR QA, a Facilities Trade or Culinary Arts. Start saving 25.00 monthly and at least 1000.00 for release needs. Stay gainfully employed in UNICOR through next Team/Release.

PREVIOUS TEAM: 20140313

Complete any Higher Educational Programs, recommend Ashworth College Program, work on degree through release. Complete a Vocational Training Program, recommend CDL License, Perdue Pest, UNICOR QA, a Facilities Trade or Culinary Arts. Stay gainfully employed thropugh next Team/Release.

PREVIOUS TEAM: 20140828

Complete any Higher Educational programs, recommend College Level Courses, work through next Team/Release. Complete a Vocational Training Program, recommend CDL License, Perdue Pest, UNICOR QA, a Facilities Trade or Culinary Arts. Continue to save 25.00 monthly and 1000.00 or more for release. Stay gainfully employed in UNICOR.

PREVIOUS TEAM: 20150219

Complete any Higher Educational Programs, recommend College Level Courses, work through next Team/Release. Complete a Vocational Training Program, recommend CDL License, Perdue Pest, UNICOR QA, a Facilities Trade or Culinary Arts. Continue to save 25.00 monthly and 1000.00 or more for release. Stay gainfully employed in UNICOR.

PREVIOUS TEAM: 20150813

Complete any Higher Educational Programs, recommend College level Courses, work through next Team/Release. Complete a Vocational Training Program, recommend CDL License, Perdue Pest, UNICOR QA, a Facilities Trade or Culinary Arts. Continue to save 25.00 monthly and 1000.00 or more for release. Stay gainfully employed in UNICOR.

PREVIOUS TEAM: 20160208

Has completed several VT courses and has programed often in the pass. Has also maintained the current work assignment and obtained good work reports. Short Term: Maintain the work assignment and maintain good work reports through 8/16. Long Term: No recommendations at this time.

PREVIOUS TEAM: 20160801

## INTERPERSONAL        *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|---|---|
| ❗ | **RELATIONSHIPS**<br>⊖ other: Single family parent. Parents divorced at age 11.<br><br>⊖ negative peer influences prior to incarceration<br>① criminal associates |
| ✔ | **FAMILY TIES/SUPPORT SYSTEM**<br>⊕ consistent social support available<br>    Companion: Emotional<br>    Companion: General |

## INTERPERSONAL          *** Disregard Response Summary and utilize only the Progress & Goals section ***

|   |   |
|---|---|
| | Immediate Family: Financial<br>Immediate Family: Emotional<br>Immediate Family: General |
| ⓘ | **PARENTAL RESPONSIBILITY**<br><br>⊖ children under the age of 21<br>ⓘ contact maintained with children<br>ⓘ contact with other parent<br><br>⊖ inconsistent financial support for some or all children<br><br>ⓘ RRC (MINT) Placement is not applicable |
| ✓ | **COMMUNICATION**<br>⊕ displays good communication skills |

**INTERPERSONAL**          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
|---|

PREVIOUS PROGRESS REPORT: 20160426

PREVIOUS PROGRESS REPORT: 20130823

PREVIOUS PROGRESS REPORT: 20100823

PREVIOUS TEAM: 20081210

PREVIOUS TEAM: 20090603

Encourage monthly family visits and write and call through release. Save money for release needs through release. Make child support payments through next Team/Release.

PREVIOUS TEAM: 20091118

Encourage monthly family visits and write and call through release. Save money for release needs through next Team/Release. Make child support payments through next Team/Release.

PREVIOUS TEAM: 20100512

Encourage monthly family visits and write and call through release. Save money for release needs through next Team/Release. Make child support payments through next Team/Release.

PREVIOUS TEAM: 20101117

Encourage monthly family visits and write and call through release. Save money for release needs through next Team/Release. Make child support payments, start by 11-2010 and make through release.

PREVIOUS TEAM: 20110427

Encourage monthly family visits, write, call and E-Mail through next Team/Release. Save money for release needs through next Team/Release. Make child/family support payments through next Team/Release.

PREVIOUS TEAM: 20111019

Encourage monthly family visits and write, call and E-mail through next Team/Release. Save money for release needs through next Team/Release. Make family/child support payments through next Team/Release.

PREVIOUS TEAM: 20120411

Encourage monthly family visits and write, call and E-mail through next Team/Release. Save money for release needs through next Team/Release. Make family child support payments through release.

PREVIOUS TEAM: 20121003

Encourage monthly family visits and write, call and E-mail through next Team/Release. Start saving money for release needs. Make famiy/child support payments through release.

PREVIOUS TEAM: 20130327

Encourage monthly family visits and write, call and E-Mail through next Team/Release. Save at least 25.00 monthly for release in a savings account. Make family/child support payments through next Team/Release.

PREVIOUS TEAM: 20130918

Encourage monthly family visits and write, call and E-Mail through next Team/Release. Save at least 25.00 monthly in a savings account. Make family/child support payments through release.

PREVIOUS TEAM: 20140313

Encourage monthly famkily visits and writer, call and E-Mail through next Team/Release. Save at least 25.00 monthly and

## INTERPERSONAL          *** Disregard Response Summary and utilize only the Progress & Goals section ***

1000.00 or more for release. Save money in a savings account.

PREVIOUS TEAM: 20140828

Encourage monthly family visits and write, call and E-Mail through next Team/Release. Save at least 25.00 monthly and 1000.00 or more through release. Continue to save money in a pre-release or savings account for release.

PREVIOUS TEAM: 20150219

Encouraged monthly family visits and write, call and E-Mail through next Team/Release. Save 25.00 monthly or more for release. Make family/child support payments through next Team/Release. Opern a savings or pre-release account.

PREVIOUS TEAM: 20150813

Encourage monthly family visits and write, call and E-Mail through next Team/Release. Save 25.00 monthly or more for release. Make family/child support payments through next Team/Release. Open a savings or pre-release account.

PREVIOUS TEAM: 20160208

Has maintained contact with family and friends during this period of incarceration. Short Term: Use the phones, email, letters, and visits to remain in contact through 8/16. Long Term: Has already completed the Parenting Programs, no recommendations at this time.

PREVIOUS TEAM: 20160801

Inmate has maintained contact with family and friends via phone calls, visits and emails since his last review.  Short term goals: Maintain strong family ties until next review in January 2017.  Long term goals: Inmate has completed Parenting class, no other recommendations suggested at this time.

## WELLNESS          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|---|---|
| ❗ | **HEALTH PROMO/DISEASE PREVENT**<br>⊖ overweight<br>① height 5 ft. 7 in.<br>① weight (lbs) 178<br>① BMI Score 27.9<br>① date calculated 12-05-2008<br><br>⊖ no regular exercise<br><br>⊕ no evidence of behaviors associated with increased risk of infectious disease<br><br>⊕ does not use tobacco (cigarettes, cigars, and/or smokeless tobacco)<br><br>⊖ did not have a primary care provider or clinic (prior to incarceration)<br>⊖ does not have health insurance coverage upon release |
| ✔ | **DISEASE/ILLNESS MANAGEMENT**<br>⊕ complies with treatment recommendations and/or takes medications as prescribed, or none required<br><br>⊕ healthy - No current health concerns<br>⊕ no dental problems<br>⊕ no non-routine services/assistance devices needed |

**WELLNESS**          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| | |
|---|---|
|  | **TRANSITIONAL PLAN** |
|  | **GOVERNMENT ASSISTANCE**<br>① has not previously received Social Security assistance<br>① inmate indicates he/she may not be eligible for Social Security assistance after release<br><br>① has not served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard<br>① spouse or a parent has not served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard |

# WELLNESS          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
| --- |

PREVIOUS PROGRESS REPORT: 20160426

PREVIOUS PROGRESS REPORT: 20130823

PREVIOUS PROGRESS REPORT: 20100823

PREVIOUS TEAM: 20081210

Complete a Correctional Counseling or Ace Program work through next Team/Release. Complete the 40 Hour Drug Program by 12-2009. Complete the Victim Impact Program by 12-2010. Maintain all medical appointments/call outs through release.

Complete a Correctional Counseling or Ace Program work through next Team/Release. Complete the 40 Hour Drug Program by 06-2009. Complete the Victim Impact Program by 06-2010. Encourage monthly family visits and write and call through release.

PREVIOUS TEAM: 20090603

Complete a Correctional Counseling or Ace Program work through next Team/Release. Complete the 40 Hour Drug Program by 6-2010. Complete the Victim Impact Program by 6-2011. Maintain all medical appointments/call outs through release.

PREVIOUS TEAM: 20091118

Complete a Correctional Counseling or Ace Program work through next Team/Release. Complete the 40 Hour Drug Program by 11-2010. Complete the Victim Impact Program by 11-2011. Maintain all medical appointments/call outs through next Team/Release.

PREVIOUS TEAM: 20100512

Complete a Correctional Counseling or Ace Program work through next Team/Release. Complete the Victim Impact Program by 05-2011. Complete Anger Management or a program of your choosing by 05-2012. Maintain all medical appointments/callouts through next Team/Release. Complete RDAP by release.

PREVIOUS TEAM: 20101117

Complete a Correctional Counseling or Ace Program work through next Team/Release. Complete the Victim Impact Program by 11-2011. Start working on a college level course and complete by 11-2012. Maintain all medical appointments/callouts through next Team/Release. Complete the RDAP Program by release.

PREVIOUS TEAM: 20110427

Complete a Correctional Counseling or Ace Program work through next Team/Release. Complete the Victim Impact Program by 05-2012. Complete a college level course by 05-2013. Maintain all medical appointments/callouts through next Team/Release. Complete the RDAP Program by release.

PREVIOUS TEAM: 20111019

Complete a Correctional Counseling or Ace Program work through next Team/Release. Complete the Victim Impact Program by 10-2012. Complete any College Level Courses, work through next Team/Release. Maintain all medical appointments/callouts through next Team/Release. Complete the RDAP Program by release.

PREVIOUS TEAM: 20120411

Complete a Correctional Counseling or Ace Program, work through next Team/Release. Complete the Victim Impact Program by 04-2013. Complete the Non-Residential Drug Program by 04-2014. Maintain all medical appointments/callouts through next Team/Release. Complete the RDAP Program by release.

PREVIOUS TEAM: 20121003

Complete a Correctional Counseling or Ace Program, work through next Team/Release. Complete the Victim Impact Program by 10-2014. Complete the Non-Residential Drug Program by 10-2013. Maintain all medical appointments/callouts through next Team/Release. Complete the RDAP Program by release.

PREVIOUS TEAM: 20130327

## WELLNESS            *** Disregard Response Summary and utilize only the Progress & Goals section ***

Complete a Correctional Counseling or Ace Program, work through next Team/Release. Complete the Victim Impact Program by 03-2014. Complete the Non-Residential Drug Program by 03-2015. Maintain all medical appointments and callouts through next Team/Release. Complete RDAP Program by release.

PREVIOUS TEAM: 20130918

Complete a Correctional Counseling or Ace Program, work through next Team/Release. Complete the Non-Residential Drug Program by 09-2014. Complete Anger Management Program by 09-2015. Maintain all medical appointments and callouts through next Team/Release. Complete RDAP Program by release.

PREVIOUS TEAM: 20140313

Complete a Correctional Counseling or Ace Program, work through next Team/Release. Complete the Non-Residential Drug Program by 03-2015. Complete Anger Management Program by 03-2016. Maintain all medical appointments and callouts through next Team/Release. Complete the RDAP Program. Work on College Courses through release or until degree earned.

PREVIOUS TEAM: 20140828

Complete a Correctional Counseling or Ace Program, work through next Team/Release. Complete the Non-Residential Drug Program by 09-2015. Complete Anger Management or Victim Impact by 09-2016. Maintain all medical appointments and callouts through next Team/Release. Complete the RDAP Program. Work on College Courses through release or until you earn degree.

PREVIOUS TEAM: 20150219

Complete a Correctional Counseling or Ace Program, work through next Team/Release. Complete the Non-Residential Drug Program by 02-2016. Complete Anger Management or Victim Impact by 02-2017. Maintain all medical appointments and callouts through next Team/Release. Work on College Courses through release.

PREVIOUS TEAM: 20150813

Complete a Correctional Counseling or Ace Program, work through next Team/Release. Complete the Non-Residential Drug Program, by 08-2016. Complete Criminal Thinking or a Counselor's Program by 08-2017. Work on a Trade/College Program through release.

PREVIOUS TEAM: 20160208

Has followed the advice of the health services department and attends all medical callouts as scheduled. Short Term: Maintain a healthy lifestyle through proper diet and daily exercise through 8/16. Long Term: Enroll in a Wellness Program of your choice and complete before 2/17.

PREVIOUS TEAM: 20160801

Since his last review, inmate has attended all medical callouts and appointments. He has also maintained a healthy lifestyle. Short term goals: Attend any medical callouts and exercise 3-4 times a week through January 2017. Long term goals: Enroll in a Health and Nutrition class by next review in January 2017.

## MENTAL HEALTH            *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|---|---|
| (!) | **SUBSTANCE ABUSE MANAGEMENT** |
| | ⊖ evidence of inappropriate use of alcohol, prescription medications and/or illegal drugs in the year prior to arrest |
| | alcohol: Weekly |
| | marijuana/hashish: Daily |
| | ⊖ no history of substance abuse treatment |
| | (!) not currently participating in substance abuse treatment |

## MENTAL HEALTH      *** Disregard Response Summary and utilize only the Progress & Goals section ***



**MENTAL ILLNESS MANAGEMENT**

⊕ no history of mental health diagnosis prior to incarceration

⊕ no mental health diagnosis during incarceration

⊕ no history of serious suicidal ideation or attempts

**TRANSITIONAL PLAN**

⊕ no medication required upon release from custody
⊕ does not require on-going treatment after release from custody
⊙ RRC placement not applicable

**APPROPRIATE SEXUAL BEHAVIOR**

⊕ no evidence of sexually inappropriate behavior

**MENTAL HEALTH**     *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
|---|

PREVIOUS PROGRESS REPORT: 20160426

PREVIOUS PROGRESS REPORT: 20130823

PREVIOUS PROGRESS REPORT: 20100823

PREVIOUS TEAM: 20081210

Complete the 40 Hour Drug Program by 12-2009. Complete the Victim Impact Program by 12-2010. Complete any Psychology Programs offered through next Team/Release.

PREVIOUS TEAM: 20090603

Complete any Psychology courses offered work through next Team/Release. Complete the 40 Hour Drug Program work by 6-2010. Complete the Victim Impact Program by 6-2011. Maintain all psychology appointments/call outs through next Team/Release.

Participated as an Inmate Companion for the Inmate Suicide Watch Companion Program in Psychology Services.

PREVIOUS TEAM: 20091118


PREVIOUS TEAM: 20100512

PREVIOUS TEAM: 20101117


PREVIOUS TEAM: 20110427


PREVIOUS TEAM: 20111019


PREVIOUS TEAM: 20120411


PREVIOUS TEAM: 20121003


PREVIOUS TEAM: 20130327

PREVIOUS TEAM: 20130918


PREVIOUS TEAM: 20140313


PREVIOUS TEAM: 20140828


PREVIOUS TEAM: 20150219

## MENTAL HEALTH       *** Disregard Response Summary and utilize only the Progress & Goals section ***

| |
|---|
| PREVIOUS TEAM: 20150813 |
| PREVIOUS TEAM: 20160208 |
| PREVIOUS TEAM: 20160801 |

## COGNITIVE       *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|---|---|
| ✓ | **GENERAL BEHAVIOR**<br>⊕ no evidence of behavioral problems as a juvenile<br>⊕ no evidence of behavioral problems as an adult |
| ! | **CRIMINAL HISTORY**<br>⊖ two or more convictions<br>    drug offenses: Multiple occurrence(s)<br>    other (Malicious Injury to Personal Property): Multiple occurrence(s)<br>    other (Resisting Arrest): Single occurrence(s) |
| ✓ | **DOMESTIC VIOLENCE/ABUSE**<br>⊕ no history of domestic violence or abuse |
| ✓ | **CRIMINAL BEHAVIOR**<br>⊕ no onset of criminal behavior before the age of 14<br>⊕ no criminal versatility: Convictions in less than 3 categories<br>⊕ no significant history of violence: Less than 2 violent convictions |

**COGNITIVE**     *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
| --- |

PREVIOUS PROGRESS REPORT: 20160426

PREVIOUS PROGRESS REPORT: 20130823

PREVIOUS PROGRESS REPORT: 20100823

PREVIOUS TEAM: 20081210

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release.

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/release.

PREVIOUS TEAM: 20090603

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release.

PREVIOUS TEAM: 20091118

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release.

PREVIOUS TEAM: 20100512

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release.

PREVIOUS TEAM: 20101117

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present federal sentence through next Team/Release.

PREVIOUS TEAM: 20110427

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present Federal Sentence through next Team/Release. Secure a stable release residence for release.

PREVIOUS TEAM: 20111019

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present Federal Sentence through next Team/Release. Secure a stable release residence through release.

PREVIOUS TEAM: 20120411

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present Federal Sentence through next Team/Release. Secure a stable release residence.

PREVIOUS TEAM: 20121003

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present Federal Sentence through next Team/Release. Secure a stable release residence.

PREVIOUS TEAM: 20130327

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present Federal Sentence through next Team/Release. Secure a stable release residence.

# COGNITIVE          *** Disregard Response Summary and utilize only the Progress & Goals section ***

PREVIOUS TEAM: 20130918

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present Federal Sentence through next Team/Release. Secure a stable release residence.

PREVIOUS TEAM: 20140313

Have good room sanitation and work reports through next team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present Federal Sentence through next Team/Release. Secure a stable release residence.

PREVIOUS TEAM: 20140828

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present Federal Sentence through next Team/Release. Secure a stable release residence.

PREVIOUS TEAM: 20150219

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present Federal Sentence through next Team/Release. Secure a stable release residence.

PREVIOUS TEAM: 20150813

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Work on a reduction of your present Federal Sentence through next Team/Release. Secure a stable release residence.

PREVIOUS TEAM: 20160208

Has demonstrated good cognitive ability during this period of incarceration, although not currently program, has programed often in the past. Has also remained incident report free. Short Term: Continue to remain IR free through 8/16. Long Term: Enroll in the Basic Cognitive Thinking program and complete by 2/17.

PREVIOUS TEAM: 20160801

# CHARACTER          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|--------|------------------|
| (!) | **PERSONAL CHARACTER** <br> ⊖ no history of behaviors indicative of positive personal character <br> ① religious assignment: PROTESTANT <br><br> ⊖ co-dependent/excessive reliance on others |
| (!) | **PERSONAL RESPONSIBILITY** <br> ① reports responsibility for current incarceration as: <br> ⊖ substance use <br><br> ⊖ no efforts to make amends for their crime(s) |

**CHARACTER**     *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
| --- |

PREVIOUS PROGRESS REPORT: 20160426

PREVIOUS PROGRESS REPORT: 20130823

PREVIOUS PROGRESS REPORT: 20100823

PREVIOUS TEAM: 20081210

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write and call through release.

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write and call through release. Make support payments on a as needed basis.

PREVIOUS TEAM: 20090603

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write and call through release.

PREVIOUS TEAM: 20091118

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write and call through release.

PREVIOUS TEAM: 20100512

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write and call through release.

PREVIOUS TEAM: 20101117

Have good room sanitation and work reports through next Team/Release. Have clear institutional conduct through next Team/Release. Continue to save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write and call through release.

PREVIOUS TEAM: 20110427

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release.  Continue to save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write, call and E-Mail through next Team/Release.

PREVIOUS TEAM: 20111019

Have good room sanitation and work reports through next Team/Release. Continue to save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write, call and E-Mail through next Team/Release.

PREVIOUS TEAM: 20120411

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Start saving at least 25.00 monthly for release. Encourage monthly family visits and write, call and E-mail through next Team/Release.

PREVIOUS TEAM: 20121003

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Start saving at least 25.00 monthly and 1000.00 for release. Encourage monthly family visits and write, call and E-mail through release. Acquire your SS Card, and Birth Certificate for release.

## CHARACTER          *** Disregard Response Summary and utilize only the Progress & Goals section ***

PREVIOUS TEAM: 20130327

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Continue saving at least 25.00 monthly for release. Encourage monthly family visits and write, call and E-Mail through next Team/Release. Acquire your SS Card and Birth Certificate for release.

PREVIOUS TEAM: 20130918

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 1000.00 monthly for release. Encourage monthly family visits and write, call and E-Mail through next Team/Release. Acquire you Birth Certificate and SS Card.

PREVIOUS TEAM: 20140313

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 or more for release. Encourage monthly family visits and write, call and E-Mail through next Team/Release. Acquire your Birth Certificate and SS Card.

PREVIOUS TEAM: 20140828

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 or more for release. Encourage monthly family visits and write, call and E-Mail through next Team/Release. Acquire your Birth Certificate and SS Card.

PREVIOUS TEAM: 20150219

Havev good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 or more for release. Encourage monthly family visits and write, call and E-Mail through next Team/Release. Acquire your Birth Certificate and SS Card.

PREVIOUS TEAM: 20150813

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write, call and E-Mail through release. Acquire your Birth Certificate and SS Card. Complete a Resume for release.

PREVIOUS TEAM: 20160208

Has demonstrated good personal character and responsibility by maintaining the work assignment and remaining incident report free. Short Term: Enroll in one of the suggested programs by 8/17. Long Term: Enroll in the Victim Impact program and complete by 2/17.

PREVIOUS TEAM: 20160801

## LEISURE          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|--------|------------------|
| 🛈 | **USE OF LEISURE TIME**<br>⊖ no evidence of positive leisure time activities |

**LEISURE**          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
| --- |

PREVIOUS PROGRESS REPORT: 20160426

PREVIOUS PROGRESS REPORT: 20130823

PREVIOUS PROGRESS REPORT: 20100823

PREVIOUS TEAM: 20081210

Exercise/participate in daily leisure activities through next Team/Release. Read at least one book per week through release. Encourage monthly family visits and write and call through release. Participate in a weekly Faith Group through next Team/Release

Exercise/participate in daily leisure activities through next Team/Release. Read at least one book per week through release. Encourage monthly family visits and write and call through release. Participate in a weekly Faith group through release.

PREVIOUS TEAM: 20090603

PREVIOUS TEAM: 20091118

PREVIOUS TEAM: 20100512

PREVIOUS TEAM: 20101117

PREVIOUS TEAM: 20110427

PREVIOUS TEAM: 20111019

PREVIOUS TEAM: 20120411

PREVIOUS TEAM: 20121003

PREVIOUS TEAM: 20130327

PREVIOUS TEAM: 20130918

PREVIOUS TEAM: 20140313

PREVIOUS TEAM: 20140828

PREVIOUS TEAM: 20150219

# LEISURE          *** Disregard Response Summary and utilize only the Progress & Goals section ***

PREVIOUS TEAM: 20150813

PREVIOUS TEAM: 20160208

Use you leisure time as you wish in a positive manner during this period of incarceration. Short Term: Use the recreation area at least three times weekly through 8/16. Long Term: You are encouraged to enroll in a hobby craft program of your choice and actively participate through 2/17.

PREVIOUS TEAM: 20160801

# DAILY LIVING          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Status | Response Summary |
|---|---|
| ✔ | **FINANCIAL MANAGEMENT**<br>⊕ knowledge in maintaining checking account<br>⊕ knowledge in maintaining savings account<br>⊕ knowledge in utilizing an ATM debit card<br>⊕ knowledge in obtaining loans<br>⊕ has an established positive credit history<br>⊕ lived within financial means<br>⊕ pays monthly bills on time |
| ✔ | **FOOD MANAGEMENT**<br>⊕ possesses grocery shopping/consumer skills<br>⊕ makes good nutritional choices to maintain health<br>⊕ possesses basic food preparation skills<br>⊕ knowledgeable in accessing community resources to obtain food |
| ✔ | **PERSONAL HYGIENE/SANITATION**<br>⊕ good personal hygiene and sanitation<br>① quarters assignment: HOUSE B/RANGE 08/BED 432L |
| ! | **TRANSPORTATION**<br>⊖ does not have valid driver's license<br>⊕ No outstanding motor vehicle violations<br><br>⊖ does not own personal vehicle with appropriate insurance<br>⊕ possesses public transportation skills and has access to public transportation |
| ! | **IDENTIFICATION**<br>⊖ does not have photo identification<br>○ does not have birth certificate<br>⊖ does not have social security card |
| ! | **HOUSING**<br>⊕ established housing year prior to incarceration<br>① established housing: paid rent<br>⊕ established housing: lived with friend<br>① established housing: non-publicly assisted<br>⊖ established housing in a high crime neighborhood |

**DAILY LIVING**     *** Disregard Response Summary and utilize only the Progress & Goals section ***

| | |
|---|---|
| | ⊙ housing upon release<br>⊙ supervision district is not a relocation<br>⊙ anticipated housing plan NOT approved by USPO(s)<br>⊙ no concerns with anticipated housing plan |
|  | **RESIDENTIAL REENTRY CENTER (RRC) PLACEMENT**<br><br>⊖ not recommended for RRC placement<br>⊙ Managment Decision: Will consider for RRC placement at 17 to 19 months near release. |
|  | **FAMILY CARE**<br><br>⊖ responsible for obtaining child care for any dependent children upon release<br>⊕ not responsible for obtaining elder care for any dependent(s) upon release<br>⊕ not responsible for obtaining any other special services for dependents upon release |

## DAILY LIVING          *** Disregard Response Summary and utilize only the Progress & Goals section ***

| Progress and Goals |
|---|

PREVIOUS PROGRESS REPORT: 20160426

PREVIOUS PROGRESS REPORT: 20130823

PREVIOUS PROGRESS REPORT: 20100823

PREVIOUS TEAM: 20081210

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write and call through release. Make child support payments on a as needed basis through release

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write and call through release. Make support payments on a as needed basis through release.

PREVIOUS TEAM: 20090603


PREVIOUS TEAM: 20091118

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Save 25.00 monthly and at least 1000.00 for release. Encourage monthly family visits and write and call through release. Make child support payments through release. Complete the 40 Hour Drug Program by 11-2010.

PREVIOUS TEAM: 20100512

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Make family support payments through release. Complete the Victim Impact Program by 05-2011. Complete the RDAP Program prior to release. Complete/Enroll in a College level program by 05-2012.

PREVIOUS TEAM: 20101117

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Make family support payments, start by 11-2010 and make through release. Complete Victim Impact by 11-2011. Exercise daily through release. Complete the RDAP Program by release.

PREVIOUS TEAM: 20110427

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Make family support payments through next Team/Release. Exercise daily through release. Complete Victim Impact by 05-2012. Complete RDAP by release.

PREVIOUS TEAM: 20111019

Have good room sanitation and work reports through next Team/Release. Have clear institutional conduct through next Team/Release. Make family support payments through next Team/Release. Exercise daily through release. Complete RDAP by release.

PREVIOUS TEAM: 20120411

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Exercise daily through release. Make family/child support payments through release. Complete a Higher Educational Program. Complete the RDAP Program by release.

PREVIOUS TEAM: 20121003

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Exercise daily through release. Make family/child support payments through release. Complete a Higher Educational Program by 10-2015. Complete Non-Residential Drug program by 10-2013. Due to seriousness of present charge recommend completition of Victim Impact by 10-2014. Complete the RDAP Program by release.

**DAILY LIVING**     *** Disregard Response Summary and utilize only the Progress & Goals section ***

PREVIOUS TEAM: 20130327

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Exercise daily through release. Make family/child support payments through release. Complete a Higher Educational Program by 03-2014. Complete the Non-Residential Drug Program by 03-2015. Complete Victim Impact by 03-2016. Complete the RDAP Program by release.

PREVIOUS TEAM: 20130918

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Exercise daily through release. Make family/child support payments through release. Complete a Higher Educational Program, work through release. Complete Anger Management by 09-2015. Complete Non-Residential Drug by 09-2014.

PREVIOUS TEAM: 20140313

Have good room sanitation and work reports through next Team/Release. Have clear Institutional coonduct through next Team/Release. Exercise daily through release. Make family/child support payments through release. Complete a Higher Educational Program, work through release. Complete Anger Management by 03-2016. Complete Non-Residential Drug Program by 03-2015. Work on College Degree through release or until complete.

PREVIOUS TEAM: 20140828

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Exercise daily through release. Make family/child support payments through next Team/Release. Complete a Higher Educational Program , work through release. Complete Non-Residential Drug Program by 09-2015. Complete Anger management by 09-2016.

PREVIOUS TEAM: 20150219

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Exercise daily through release. Make family/child support payments through release. Complete any Higher Educational Programs, work through release. Complete the Non-Residential Drug Program by 02-2016. Complete Anger Management or Victim Impact by 02-2017.

PREVIOUS TEAM: 20150813

Have good room sanitation and work reports through next Team/Release. Have clear Institutional conduct through next Team/Release. Exercise daily through release. Make family/child support payments through release. Complete any Educational Programs/Trade through release. Complete Non-Residential Drug by 08-2016. Complete Criminal Thinking or a Counselor's Program by 08-2017.

PREVIOUS TEAM: 20160208

Has done very well during this period of incarceration, and has programed often in the past. Has maintained the work assignment and remained IR free. Short Term: Maintain good weekly cell sanitation reports through 8/16. Long Term: Enroll and complete at least one of the suggested programing by 2/17.

PREVIOUS TEAM: 20160801

Inmate has maintained a good work ethic and good cell sanitation since his last review. He remains incident report free. Short term goals: Maintain good work ethic and good cell sanitation through January 2017. Long term goals: Enroll and participate in Job Fairs and Employability class by January 2017.

## INMATE SKILLS STATUS

| Status | Initial Assessment 12-10-2008 | Previous Assessment 08-01-2016 | Current Assessment 12-29-2016 |
|--------|------------------------------|-------------------------------|-------------------------------|
| ⊕ Attention Required | 47.8% | 49.2% | 49.2% |
| ⊟ Mitigating Issues | 0% | 0% | 0% |
| ? Unanswered | 17.8% | 2.8% | 2.8% |
| ✓ Satisfactory | 32.2% | 45.6% | 45.6% |
| ⊘ Not Applicable | 2.2% | 2.5% | 2.5% |

| Skill Area | Attention Required ⊕ | Mitigating Issues ⊟ | Unanswered ? | Satisfactory ✓ | Not Applicable ⊘ |
|------------|---------------------|---------------------|--------------|----------------|------------------|
| Academic | 5% | 0% | 0% | 95% | 0% |
| Vocational/Career | 75% | 0% | 0% | 25% | 0% |
| Interpersonal | 32.5% | 0% | 0% | 65% | 2.5% |
| Wellness | 15% | 0% | 25% | 40% | 20% |
| Mental Health | 25% | 0% | 0% | 75% | 0% |
| Cognitive | 30% | 0% | 0% | 70% | 0% |
| Character | 100% | 0% | 0% | 0% | 0% |
| Leisure | 100% | 0% | 0% | 0% | 0% |
| Daily Living | 60% | 0% | 0% | 40% | 0% |



# MEMORANDUM

**DATE:** December 26, 2016

**REPLY TO**
**ATTN OF: Cameron Ellison, Recreation Specialist**

**SUBJECT:** Letter of Recommendation Terrance Smalls

**TO:** Whom it may concern

I have known Mr. Smalls for over 10 years, his professionalism has never changed. Always a voice of encouragement and understanding, in my opinion, Mr. Smalls has a better outlook on life and understands the mistakes he made in the past. I applaud the character Mr. Smalls has shown through-out the years I've known him. Not often people are given a second chance at freedom, I believe Mr. Smalls can be a solid productive citizen back in society.

Thank you for your consideration,

Cameron Ellison
Recreation Specialist

**Date:**   Sunday, January 01, 2017

**Reply to**
**Attn of:**   Michael Werts, Recreation Specialist

**Subject:**   Letter of Recommendation for Terrance Smalls

**To:**   Whom it may concern

I first met Mr. Smalls in early 2006. In that time I've known Mr. Smalls to be a well composed person for the situation he's had to deal with. He's handle them in a positive way. Mr. Smalls has worked for me for the past 4 years as a Unit Coordinator. He's done an outstanding job with the job and his knowledge of the games and his ability to work with others. After talking with Mr. Smalls on several occasions I feel that Mr. Smalls has done his time, and is and will be a person who can be counted on to become a positive citizen in society.

Thank for your time in advance

Michael E. Werts
Recreation Specialist

121 Morrall Drive
Beaufort, SC 29906

December 30, 2016

To Whom It May Concern:

My name is La Troas Williams and I have been an elementary school teacher for the last 19 years in Terrance Smalls' hometown of Beaufort, South Carolina. I have lived here since I was a child and have known him and his siblings since I was in high school. Terrance and his family are well known and respected in our community and I have always known him to be a friendly and kind person.

After I graduated from high school, I worked with Terrance for about a year at a local clothing store. It was obvious from the beginning of my employment there how much he was respected and trusted at his job, because he had several responsibilities that extended beyond his position. He was responsible and dependable and was often requested by our employers to handle important situations. Although he demonstrated professionalism, he was also very personable and knew many of our regular customers by name.

I feel that Terrance will be an asset to our community because he has shown good conduct during his incarceration and has made good use of his time by furthering his knowledge. But the most important reason is because I used to send him Sunday School lessons; which he used to spread the gospel to others in a bible study group at some point during his imprisonment. His growth in his religious faith seems to have kept him on a positive track.

Sincerely,

*La Troas Williams*

La Troas Williams

December 21, 2016


Paulette Moultrie

1227 Triece Lane

Charlotte, NC 28215


Dear Honorable District Judge Sol Blatt Jr,


I am writing to provide a character reference for my friend Terrance L. Smalls, whom I have known for over 20 years.

Terrance Smalls is a man that is passionate about God, change, and family. Although he has made bad decisions in his life, he has managed to learn from them through his rehabilitation in the federal system. Terrance have developed skills to help educate and teach others recovering from making bad choices and making God a priority. From his knowledge and life experiences, other inmates, families, and friends rehabilitated their lives after incarceration. He leads by example through his work ethics at UNICOR, spirituality, and being a great friend. Leadership is lost in some of our communities and great leadership sometimes comes from learning from life experiences. I think his life story and life experiences will give us hope for change. I would love for him to have a second chance in our society to help our future children to become better fathers, sisters, brothers, uncles, and friends. God gives the toughest fight to the strongest soldiers. I think he has fought his battle and deserves a second chance to make a difference in our society.


Thank you in advance for your consideration.


Sincerely,

Paulette Moultrie, A Friend