IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | Criminal. No.: 9:98 - 322 |
| | ) | |
| | ) | **MEMO IN SUPPORT OF** |
| vs. | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **COMPASSIONATE RELEASE** |
| **Terrance L. Smalls,** | ) | |
| Defendant. | ) | |

Undersigned counsel, appointed to assist the Defendant on October 4, 2021, Dkt. # 1436, respectfully requests that the Court grant the Defendant's request for a sentencing reduction.

## I.   Procedural History

On May 20, 1999, the Defendant pled guilty to two counts. Count 1 charged him with conspiracy to possess with intent to distribute and distribution of cocaine and cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Count 2 charged him with possession with intent to distribute crack in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and § 2.

The Defendant entered a plea agreement with the government. Dkt. # 361. The parties agreed that the amount of drugs that the Defendant was responsible for was between 500 grams and 1.5 kilograms of crack cocaine. PSR ¶ 4. This put his base offense level for the drugs at 38. PSR ¶ 36. Today, his base offense level for 1.5 kilograms would be 32. U.S.S.G. § 2D1.1(c)(4).

However, the PSR gave Smalls a two-level enhancement for possessing a dangerous weapon. It also applied a cross reference to First Degree Murder for the killing of Audrey Stoeckle. PSR ¶¶ 38, 39. The cross reference changed the base offense level to 43. Despite having only a criminal history category of II, this raised Smalls guidelines all the way to LIFE.

Because the statutory maximum for each of his charges was twenty years, the guidelines became 480 months. The court sentenced him to that amount on February 13, 2004. Dkt. # 777.

The Defendant appealed and the Fourth Circuit Court of Appeals remanded his case for resentencing. The Fourth Circuit held that the sentence had been imposed in violation of *United States v. Booker,* 125 S. Ct. 738 (2005). Ex. 1, *United States v. Smalls,* 134 F. App'x. 609 (4th Cir. 2005). The Fourth Circuit noted that the facts to which Smalls pleaded guilty supported an offense level of 38, resulting in a sentencing range of 262 to 327 months. The court's application of the § 2D1.1(d)(1) murder cross-reference — predicated on facts related to Stoeckle's murder to which Smalls did not plead guilty — increased his offense level to 43, resulting in a guideline sentence of life in prison. Under *Booker*, the sentencing court erred in relying on its own fact-finding to impose a sentence on Counts 1 and 2 in excess of 327 months. Ex. 1, *6.

Significantly, the court also said that "the sentencing error made by the court was prejudicial, in that Smalls' 480-month sentence was 153 months longer than the maximum of 327 months authorized by the facts to which he pleaded guilty . . . As a result of this error, Smalls was sentenced to a term of imprisonment greater than that authorized by the facts to which he had pleaded guilty." *Id.*

On August 25, 2005, the Defendant was resentenced to 480 months, 240 months for each count, to run consecutive to each other. Dkt # 936. An appeal was filed again. The Court of Appeals in *United States v. Smalls*, 185 F. App'x 218 (4th Cir. 2006) affirmed the sentence, including the application of the murder cross-reference. Ex. 2. Thereafter the Defendant filed a 28 U.S.C. § 2255 petition, which was also denied. Dkt.# 1116. Appeal of this order was unsuccessful.

Next, the Defendant filed a motion seeking a reduction of his sentence under an amended sentencing guideline. Dkt. # 1337. This was denied because the court determined that the Defendant's guideline range was determined by the cross reference and not the weight of drugs. Dkt. # 1368.

In November of 2020, the Defendant filed a motion to reduce his sentence under the First Step Act of 2018. Dkt. # 1414. He argued that he was eligible for resentencing because his convictions for distribution of crack cocaine under 18 U.S.C. § 841(b)(1)(C) were qualifying convictions under the First Step Act. The court found that he was eligible for resentencing under Fourth Circuit precedent at the time but denied his motion after consideration of the sentencing factors listed in 18 U.S.C. § 3553(a). Dkt. # 1425.

The Defendant appealed this court's decision. In his brief to the appellate court, he argued that the district court had failed to properly consider several of his arguments regarding post-sentencing mitigation evidence. Docket of Appeal attached as Ex. A. The government filed a motion to hold the appeal in abeyance to await the Supreme Court's decision of the then pending case of *Terry v. United States*, 141 S. Ct. 1858, 210 L. Ed. 2d 108 (2021). Ex. B. After *Terry* was decided, the government then moved for summary affirmance because Smalls no longer qualified for relief under the First Step Act because his convictions were to crack cocaine charges under 18 U.S.C. § 841(b)(1)(C). The court, *never reaching the merits* of Smalls' claims, granted the motion for summary affirmance. Dkt. # 1432.

## II. **The Defendant's request for compassionate release.**

The Defendant filed a request for compassionate release with his warden on January 25, 2021. Dkt. # 1444 Ex. 1. The response from the BOP highlights the failure of BOP to implement

3

the changes required under the First Step Act. See Dkt. # 1444 Ex. 2. The response clearly relies upon an outdated understanding of the law. The BOP program statement cited by the warden applies to the *prior* statutory scheme that allowed a sentencing court to reduce a sentence *only* upon motion of the BOP and *only* for reasons articulated by the BOP's own policy statement.

The statute was changed to allow inmates to apply directly to the sentencing court for a sentence reduction or release upon denial of the BOP or after 30 days of making such a request. See *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). Furthermore, the Fourth Circuit has made clear that the BOP policy statement regarding release is inapplicable to prisoner-initiated requests for resentencing under 18 U.S.C. § 3582(c)(1)(A). *Id*.

The government completely ignores the importance of *McCoy* and continues to rely upon an outdated and irrelevant BOP policy statement. This court should reject the government's attempt to shoehorn an outdated policy statement into clearly inapplicable motions for compassionate release filed by defendants and not the BOP.

*McCoy* also affirmed the authority and discretion of the district courts. The Court affirmed that the First Step Act "expand[ed] the discretion of the courts to consider leniency." *Id*. (internal citations omitted).

The Defendant's motion for compassionate release, Dkt. # 1434, adequately laid out the extraordinarily and compelling grounds for his release as well as his exceptional rehabilitation. Counsel seeks to highlight a few of the issues that the court should pay close attention to.

*A. The Defendant has exhausted his administrative remedies.*

The government argues that Smalls failed to exhaust his administrative remedies because in his request to the warden he only mentioned the COVID 19 outbreak and his post-conviction

conduct and not changes in the law that affect his sentence. The government relies upon United States v. Williams, 987 F.3d 700 (7th Cir. 2021), but fails to recognize that Williams supports the Defendant in this case. The requirement is not jurisdictional, but merely a "claims processing" one. See United States v. Muhamamd, --- F.4th ----, 2021 WL 4888393, at *4 (4th Cir. Oct. 20, 2021). Under Williams, Smalls claims in his request to the warden and his initial motion are "similar" enough to meet this low bar. Finally, the warden's response, as discussed *supra*, shows that even had Smalls mentioned the changes in the law, the BOP's would not consider that grounds relevant in the first place based upon its reliance on an outdated policy. The court must also be cognizant of its general responsibility to liberally construe the filings of *pro se* litigants. "*Pro se* filings are held to a less stringent standard than those drafted by attorneys…" Byrd v. Stirling, 144 F. Supp. 3d 803, 806 (D.S.C. 2015) (citations omitted).

    B. *The Defendant's extraordinary and compelling reasons for relief.*

Smalls argued, correctly, in his *pro se* brief that this court can consider changes in the law that would affect his sentence. See McCoy. Additionally, the court should consider changes to the guidelines as well that would affect his sentence. United States v. Lancaster, 997 F.3d 171, (4th Cir. 2021). Smalls reincorporates and re-iterates his argument from his First Step Act motion (Dkt. # 1414, Parts III & IV) that 1) changes in the law and guidelines allow the court to resentence him, 2) his rehabilitation is extraordinary, and 3) he should be sentenced like similarly situated defendants, including his co-defendant Gibbs.

    C. *The changes in the law and guidelines.*

Although not made retroactive, Amendment 684 of the United States Sentencing Guidelines (USSG) would apply to Smalls if he were to be sentenced today. On November 1,

5

2006, the United States Sentencing Commission ("the Commission") passed Amendment 684. Among other things, the amendment changed the cross reference to include and allow the sentencing court to cross reference to second degree murder. U.S.S.G. Manual, Supp.App. C, Vol. III, at 154-158 (2006) (Amendment 684). Previously, the guideline allowed a cross reference to only first-degree murder.

The court rejected this argument in Smalls' First Step Act motion, Dkt. # 1425 (hereinafter "Smalls Order"), but the court made factual errors relating to the death of Ms. Stoeckle and the Defendant's criminal background. As to Ms. Stoeckle, the court stated that the government offered evidence at his sentencing that Smalls had participated in Stoeckle's murder because he thought she was a "snitch." Smalls Order, p. 4. However, there is not evidence in the record to support this. Rather, it was Smalls' co-defendant, Gibbs, who believed Ms. Stoeckle was a "snitch" responsible for Gibb's arrest and prosecution on then-pending state charges.

Second, the court misstated the Defendant's criminal record, finding that he had convictions for trafficking cocaine, failure to stop for a blue light, and malicious injury to property. Smalls Order, p. 5. This is incorrect. Smalls' three prior state convictions were for a misdemeanor offense of unlawful carrying of a pistol, a misdemeanor offense of resisting arrest, and a misdemeanor offense of malicious injury to property.

These misstatements of facts are significant. In assessing Mr. Smalls' argument relating Amendment 684, the court relied upon the erroneous fact that Mr. Smalls' shot Ms. Stoeckle because Smalls believed she was a police informant. But, as shown above, there is no evidence in the record that Smalls believed this.

The court should be cognizant of the difference between first and second-degree murder – that is premeditation. See *United States v. Delaney*, 717 F.3d 553 (7th Cir. 2013). But even second-degree murder is "in a sense premeditated, for otherwise it would not involve 'malice aforethought.'" *Id*. That is, a defendant must have "harbored before the killing a conscious intention to kill[]" for a homicide to be second-degree murder. *Id*. at 555.

The fact that Smalls' killing of Ms. Stoeckle was "intentional" is not equivalent to harboring malice aforethought. The purported reason for Smalls' action in the court's prior decision was that "she was suspected to be a police informant." As discussed above, there is no evidence to support this statement. In fact, the evidence of pre-meditation for Ms. Stoeckle's death points only toward Smalls' co-defendant, Gibbs. See Order at 6-7, *Gibbs v. United States*, Civil No. 9:02-2970-SB (hereinafter "Gibbs § 2255 Order") (D.S.C. July 3, 2003), ECF No. 12. There is evidence in the record not only that Gibbs "pulled out the gun and just shot" Ms. Stoeckle, Dkt # 1315-3, but also that Gibbs told others that he (Gibbs) had killed, and would kill, others for cooperating with authorities, *id*. at 13, 25, 31. It was Gibbs who disposed of the gun, further evidence of premeditation. *Id*. at 21. The only evidence in the record on premeditation points towards only one man, Gibbs, and not Smalls.

### D. The Defendant is rehabilitated.

The Defendant also reincorporates his previous argument about his rehabilitation. See Dkt # 1414. The sheer amount of work he has done is above and beyond the average inmate. As discussed at length, he has numerous letters of support from BOP employees, raving work reviews, and participation as a suicide companion. What is also extraordinary is his *consistency* over time.

Smalls has maintained a completely clean disciplinary record. When coupled with his minimal misdemeanor record, his actions surrounding his federal charges were completely an anomaly.

   *E. The Defendant should not be treated more harshly than similarly situated defendants.*

The court must consider the unwarranted sentencing disparities of other similarly situated defendants. This of course begins with his co-defendant Gibbs, who had his sentence reduced from LIFE imprisonment to 35 years in prison.[1] Dkt. # 1396 (hereinafter "Gibbs Order"). This sentence is 5 years lower than Smalls current sentence of 40 years. Yet Gibbs is a man who is eminently more dangerous than Smalls. He has been convicted of more offenses related to the same drug distribution conspiracy, has a worse prior record, was older than Smalls at the time of the offense, and has had a markedly worse disciplinary record in the BOP since he was sentenced.

Smalls and Gibbs were on similar footing when it came to the original sentencing. Neither Smalls nor Gibbs received any acceptance of responsibility in the calculation of the original applicable sentencing Guideline range. Smalls entered into a plea agreement with the government but had been found in violation of that agreement; Gibbs proceeded to trial.

Gibbs was convicted after a jury trial on six (6) counts of the Third Superseding Indictment: conspiracy to distribute a quantity of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); conspiracy to carry a firearm in relation to a drug trafficking crime (Count 2); use of a firearm during and in relation to a drug trafficking crime (Count 3); felon in possession of a

---

[1] This Court has previously reduced sentences pursuant to the First Step Act for at least one additional defendant who had the murder cross reference applied in his case. See *United States v. Sean Sullivan*, 9:00-cr-263-RMG-6, Dkt. # 1338. Like Mr. Gibbs, Mr. Sullivan was previously sentenced to LIFE. The Court reduced his sentence to 300 months.

ammunition (Count 4); possession with intent to distribute "crack" (Count 5); and possession with intent to distribute cocaine (Count 6). Gibbs Order, p. 1.

Gibbs was sentenced by the same sentencing judge who sentenced Smalls. The sentencing judge sentenced Gibbs to Life as to Count 1, 20 years as to Count 2, 10 years as to Count 4, Life as to Count 5, and 40 years as to Count 6, all to run concurrently. The sentence for Count 3 was 5 years, to be served consecutively to all other sentences. *Id*

Gibbs had a significantly worse prior criminal record than Smalls. See Gibbs Order at 4 ("The Defendant had a significant criminal history, which includes crimes of violence and drug distribution."). Even assuming reliance upon the district court's erroneous recitation of Mr. Smalls' prior criminal history, Smalls' offenses listed by the district court consisted of three non-violent misdemeanors. The government has offered no evidence suggesting Smalls has evidenced any violent behavior outside his involvement with Ms. Stoeckle's murder. Gibbs has a significantly worse post-sentencing record in the BOP. Gibbs was sentenced in June 2000. He waited until 2012 to begin behaving and to maintain a clear disciplinary record. See Gibbs Order at 4.

Gibbs' BOP disciplinary record established Gibbs had been "sanctioned multiple times for a range of offenses, some involving fighting and one involving possession of a dangerous weapon." *Id*. (emphases added). Yet Mr. Smalls has had over 22 years of discipline-free conduct in the BOP. Finally, the district court noted that Gibbs was 35 years old at the time of his conviction, and that Gibbs' "decrease" in disciplinary infractions "reflect a pattern of decreased criminal activity often seen as criminal defendants age." *Id*. at 5-6. "This mixed history supports a

significant sentence, but also causes the Court to carefully consider whether a sentence less than Life might be sufficient but not greater than necessary." *Id*.

In the Gibbs Order, the court relied in part on Gibbs' age to grant relief, noting that "[h]e is now 55 years old, and his decrease in disciplinary infractions . . . reflect a pattern of decreased criminal activity often seen as criminal defendants age." Gibbs Order at 5. While Gibbs may have been 55 years old when the district court granted him relief under § 404(b) of the Act, so too is Mr. Smalls in an age group (Smalls in now 47 years old) which has a statistically significant reduced risk of recidivism. The court was obviously aware that objective statistical evidence has found that "the risk of recidivism is inversely related to an inmate's age." *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014); see also *id*. ("There is a statistically significant drop in recidivism for offenders aged 45 to 54 compared with 35 to 44-year olds, and rates for those aged 55 and older are even lower.").

Additionally, the court's statements evince that its awareness of objective statistics which show the need to account for a recidivism risk is significantly diminished when a prisoner is released in his forties or fifties. Indeed, statistics from the Department of Justice indicate that people at both Gibbs' and Smalls' age are unlikely to reoffend. See Office of the Inspector Gen., U.S. Dep't of Justice, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* 38 (2016).[2] The United States Sentencing Commission has found that "age is generally a strong factor influencing the likelihood of committing a crime," with "older offenders . . . substantially less likely than younger offenders to recidivate following release." U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* (hereinafter "2017 Recidivism Report"),

---

2 Available at https://oig.justice.gov/reports/2015/e1505.pdf.

11, 30 (Dec. 2017).[3] See also U.S. Sentencing Comm'n, *Federal Probation and Supervised Release Violations*, 19 (July 28, 2020)[4] (average age of 37 of supervised release violators).

     Mr. Smalls is currently 47 years old. Not only should Smalls be accorded the same consideration as was Gibbs due to his current age, but Smalls was considerably younger than Gibbs when he (Smalls) committed the crimes underlying the instant offenses of conviction. Smalls was between 18 and 24 years old when he was involved in the drug conspiracy and was 20 years old when Ms. Stoeckle was murdered. Gibbs was approximately 35 years old.

     Ongoing scientific research now establishes that brain development continues into an individual's early 20s. See Elizabeth Scott, et al., *Young Adulthood as a Transitional Legal Category: Science, Social Change, and Justice Policy*, 85 Fordham L. Rev. 641, 642 (2016) (noting that "biological and psychological development continues into the early twenties, well beyond the age of majority."). This includes the idea that in young adulthood, "as in adolescence, areas of the brain that regulate functions like judgment and self-control are still not fully mature." BJ Casey, et al., *How Should Justice Policy Treat Young Offenders? A Knowledge Brief of the MacArthur Foundation Research Network on Law and Neuroscience*, The MacArthur Foundation Research Network on Law and Neuroscience, at 2 (2017). See also Alexandra O. Cohen, et al., *When Does a Juvenile Become an Adult? Implications for Law and Policy*, 88 Temp. L. Rev. 769, 788 (2016) ("The developmental science referenced in U.S. Supreme Court decisions regarding treatment of juvenile versus adult offenders . . . acknowledges immature cognitive capacity in

---

3 Available at https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.
4 Available at https://www.ussc.gov/research/research-publications/federal-probation-and-supervised-release-violations.

juveniles as a mitigating factor in judgments of criminal culpability. . . . Recent findings on young adults suggest that these same vulnerabilities affect young adults.").

Perhaps most significant, and ignored by the government, is that the BOP has determined that Smalls' risk of recidivism is low.   Dkt. # 1434-2, Ex. F.

   *F. The Defendant's medical conditions*

Although he does not have any medical conditions that put him at especial risk of COVID-19, Smalls, like all prisoners, is more at risk than the general public.[5]   And, Smalls has been vaccinated, he has not been boosted despite a desire to do so.   Smalls was vaccinated in April of 2021.   The Center for Disease Control recommends all people be boosted 5 months after receiving their second shot.[6]   Smalls reports that while others in the prison were recently offered and received boosters, he was not given that opportunity.

Additionally, Smalls was recently told that he would need surgery on a herniated disk in his back.   This chronic condition is causing muscle loss in his left leg.   He is developing a limp from this condition.

## V.  Conclusion

The Defendant is eligible for a sentencing reduction after the changes to 18 U.S.C. § 3582. The court should consider his long incarceration, his rehabilitation, and the changes in the guidelines that suggest a lower guideline level would be in effect where he to be sentenced today. The Defendant respectfully requests a time served sentence, which would represent a guideline

---

5 https://www.cdc.gov/mmwr/volumes/69/wr/mm6933a3.htm (last visited January 14, 2022).
6 https://www.cdc.gov/coronavirus/2019-ncov/vaccines/booster-shot.html (last visited January 14, 2022).

sentence as re-calculated under the current guideline cross reference to Second Degree Murder.

                                            Respectfully submitted,

                                            *s/Cody J. Groeber*
                                            Cody J. Groeber, Esquire
                                            Assistant Federal Public Defender
                                            P.O. Box 876
                                            Charleston, South Carolina 29402
                                            (843) 727-4148

January 14, 2022